UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO. 22-CR-10057-MLW
)
MONICA CANNON-GRANT, )
CLARK GRANT, )
Defendants )

**Motion For Bill of Particulars**
**and Incorporated Memorandum of Law**

Now come the Defendants, Monica Cannon-Grant and Clark Grant, by and through undersigned counsel, pursuant to the Fifth and Sixth Amendments to the United States Constitution, and Rules 12(b)(3) and 7(f) of the Federal Rules of Criminal Procedure, and hereby move the Court for an order compelling the government to provide a bill of particulars that: (1) identifies the *donors* allegedly defrauded by the defendants, as charged in the Count 1 conspiracy and the substantive scheme to defraud charged in Counts 5-7, 9-10; (2) particularizes the false statements at issue regarding the charged donations, including the manner and means by which the defendants "[f]alsely represented VIB as a non-profit that did not pay salaries or other compensation to its CEO [ ] or its Director [ ];" and (3) identifies the VIB directors and financial bookkeeper/auditors from whom compensation was allegedly concealed.

Among the conspiracies and schemes to defraud charged in the indictment, the government alleges that the defendants engaged in a scheme to defraud in connection with the operation of Violence in Boston, a "Massachusetts entity that Cannon-Grant formed in at least as early as 2017 to raise money to reduce violence, raise social awareness, and aid community causes, among other purposes." Indictment at ¶1. The charged VIB scheme to defraud includes

monies secured through grants and donors. While the indictment identifies the particular grants at issue and the allegedly false certifications/statements at issue with those grants, it does not provide necessary particulars regarding which donors, from amongst the thousands of donors to VIB, were allegedly defrauded. It likewise does not sufficiently particularize how, when, or to whom the defendants "[f]alsely represented VIB as a non-profit that did not pay salaries or other compensation to its CEO [ ] or its Director [ ]." And, lastly, it does not identify the VIB directors and financial bookkeeper/auditors from whom compensation was allegedly concealed. Without the requested bill of particulars, the defendants will be left to guess (1) the identities of witnesses critical to the charged VIB scheme, (2) the false statements allegedly at issue, and (3) the means by which they allegedly made material false representations, all of which will deny the defendants a meaningful opportunity to prepare for trial in this matter.

Wherefore, for the reasons detailed *infra*, the defendants respectfully submit a bill of particulars is appropriate here. *See, e.g., United States v. Hallock*, 941 F.3d 36, 40 (1st Cir.1991) (noting that a "bill of particulars serves three purposes: to give the accused details concerning the charges against him, enabling him to prepare a defense; to prevent double jeopardy; and to avoid surprise at trial); *United States v. Trie*, 21 F.Supp.2d 7, 21-22 (D.D.C.1998) ("A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information"); *United States v. Tomasetta*, 429 F.2d 978, 980 (1st Cir. 1970) ("On an indictment as vague as that at bar, it is possible, however unlikely, for a prosecutor to obtain a conviction based wholly on evidence of an incident completely divorced from that upon which the grand jury based its indictment. The prosecution may not have the

power ‘to roam at large’ in this fashion”), *quoting Russell v. United States*, 369 U.S. 749, 768 (1962) (“Far from informing Price of the nature of the accusation against him, the indictment instead left the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal”).

**REQUEST FOR ORAL ARGUMENT**

The defendants respectfully request oral argument on the within motion.

**Local Rule 7.1(a)(2) Certification**

The parties have conferred and the government has advised it will oppose the relief sought herein.

**Memorandum of Law**

I. **The Charged VIB Scheme To Defraud.**

In 2017, Monica Cannon-Grant established a social justice foundation called Violence In Boston (“VIB,” herein) “to raise money to reduce violence, raise social awareness, and aid community causes, among other purposes.” Indictment ¶1. Through Ms. Cannon-Grant’s relentless efforts and activism, contributions to VIB consistently grew from 2017 to 2019, with reported contributions increasing during those years in the following amounts:

| YEAR | REPORTED CONTRIBUTIONS |
|---|---|
| 2017 | $5,300 |
| 2018 | $45,302 |
| 2019 | $85,403 |

Indictment at ¶26. Contributions grew dramatically in 2020 and 2021. *See* Indictment at ¶24. In total, the indictment alleges that “[f]rom 2017 to 2021, Cannon-Grant and Clark Grant, through

VIB fundraising, solicited and received over a million dollars in donations and grants from individuals, charitable institutions, and other entities." Indictment at ¶3. The indictment identities two means by which VIB received contributions—donations and grants. At issue here are the allegations centered around donations—in particular, Count 1 (VIB conspiracy), Counts 5-7 (substantive VIB scheme to defraud), and Counts 9-10 (substantive VIB scheme to defraud), as detailed in Paragraphs 6-27, 78-79, and 86-87.[1]

In today's typical fashion, at its outset, the indictment contains an "overview" of the charged scheme, an "object and purpose" paragraph, a "manner and means" section, and an "acts in furtherance" section, with the government incorporating relevant paragraphs into the actual charging paragraphs. As for the "overview" of the charged VIB scheme, the indictment alleges that Ms. Cannon-Grant and Clark Grant "agreed to use VIB as a vehicle to personally enrich themselves and their designees," and that from "2017 to at least 2020" the defendants "presented themselves as uncompensated VIB Directors to donors and other charitable institutions." Indictment at ¶6. The indictment alleges the defendants carried out the VIB fraudulent scheme/conspiracy via the following manner and means:

> (a) falsely representing VIB as a non-profit that did not pay salaries or other compensation to its CEO (Cannon-Grant) or its Director (Clark Grant);
>
> (b) applying for public-and private-funded grants and donations to be used for VIB charitable purposes, but instead using portions of grant and donation money to pay for Cannon-Grant's and Clark Grant's personal expenses;
>
> (c) concealing from other VIB directors and VIB's financial bookkeepers/auditors the fact that Cannon-Grant and Clark Grant were issuing VIB funds to pay personal expenditures through their control of the VIB Bank Account and VIB PayPal Accounts;
>
> (d) concealing from other VIB directors and VIB's financial bookkeepers/auditors

[1] There are two additional VIB-related counts, Count 4 (charging Ms. Cannon-Grant alone with mail fraud) and Count 8 (charging both defendants with wire fraud), but those two counts concern grants and are therefore not at issue here.

the fact that Cannon-Grant and Clark Grant were secretly cashing and depositing VIB donation/grant checks to enrich themselves;

(e) making thousands of dollars of cash withdrawals from the VIB Bank Account to fund personal expenses and avoid a financial paper trail; and

(f) filing false reports with the AGO that concealed the fact Cannon-Grant and Clark-Grant were receiving income and other forms of compensation from VIB.

Indictment at ¶8.

Next, in a section entitled "Acts In Furtherance Of The VIB Wire Fraud Conspiracy And Scheme To Defraud," the indictment attempts to detail certain "grants" and "donations" at issue. While the indictment identifies two specific grants and the allegedly false representations to those grantors, *see* Indictment at ¶¶9-12 ("Department Store Company Grant Fraud"), ¶¶14-19 ("District Attorney's Office Grant Fraud"), the indictment largely reverts to vague allegations as to donations. First, the indictment alleges that the defendants fraudulently cashed four (4) checks received from "Network For Good," which is identified under a column entitled "donor." Indictment at ¶13. Three of these checks are charged in Counts 5-7. Indictment at ¶87. The indictment itself notes, however, that "Network For Good" is merely a "third-party payment processor that processed charitable donations made to VIB through Facebook." Indictment at ¶13, n.3. Second, the indictment alleges that donations collected in 2018, 2019 and 2020, through PayPal and VIB's bank account, were fraudulently used to pay for personal expenses. Indictment at ¶¶21-22, 24-25. There are no details, however, regarding the identity of any particular donor defrauded by any such expenditures, or specified representations to any particular donors.

There are three donors identified in the indictment—namely, a Cambridge Women's Organization allegedly defrauded of $500.00, *see* Indictment at ¶13 at p.7 (last entry in table),

¶18, and at p.8, n.4, a Cambridge Black Lives Matter organization allegedly defrauded in connection with a $3,000 PayPal donation, Indictment at ¶20, and a different "Cambridge-based foundation" allegedly defrauded in connection with a $500 donation, Indictment at ¶23. These donations are cited within the "acts in furtherance" section of the indictment, but they are not charged in any of the substantive fraud counts. *See* Indictment at ¶87 (Counts 5-10). Moreover, there are no facts as to how or when false representations or certifications were made to these donors. *See* Indictment at ¶¶13, 20, 23. For example, the indictment alleges that on August 22, 2017, a Cambridge Black Lives Matter organization "made a $3,000 PayPal donation to VIB to support VIB's program to feed needy children." Indictment at ¶20. The indictment then alleges that two days later $3400 was transferred to a family member's account, and on August 28, 2017, a cash withdrawal of $3400 was made from the family member's account. There are no allegations regarding any representations made by any defendant to the Cambridge Black Lives Matter organization or even that the money was not utilized for an appropriate purpose.

II. **At minimum, a Bill of Particulars is warranted.**

It is well settled that a bill of particulars is the appropriate remedy where an indictment passes constitutional muster but fails to adequately apprise a defendant regarding the nature of the charges against him or her. *See United States v. Barbato*, 471 F.2d 918, 921 (1st Cir.1973) (noting that the remedy for an individual charged with a federal criminal offense who finds "himself uncertain as to the nature of the charges against him" is "to file a motion for a bill of particulars" in the trial court). A "bill of particulars serves three purposes: to give the accused details concerning the charges against him, enabling him to prepare a defense; to prevent double jeopardy; and to avoid surprise at trial." *Hallock*, 941 F.3d at 40; *United States v. Abreu*, 952 F.2d 1458, 1469 (1st Cir.1992) ("The function of a bill of particulars is to provide the defendant

with necessary details of the charges against him to enable him to prepare his defense, to avoid surprise against trial, and to protect against double jeopardy"). And, of course, the decision whether to grant a bill of particulars "is left to the sound discretion of the trial judge," *Hallock*, 941 F.3d at 40, with at least one court characterizing the discretion as "very broad." *See, e.g.*, *United States v. Rogers*, 617 F.Supp.1024, 1028 (D.Colo.1985). Indeed, it bears emphasizing, the "1966 amendment to Rule 7(f) of the Federal Rules of Criminal Procedure [] intended to liberalize discovery by eliminating the requirement that cause be shown before a court may grant a bill of particulars . . .." *United States v. Paiva*, 892 F.2d 148, 154 (1st Cir.1989) (but noting any liberalization certainly "did not take away a district court's discretion in deciding such motions"); *Rogers*, 617 F.Supp.at 1028 (D.Colo.1985) (noting Rule 7(f)'s amendment "was 'designed to encourage a more liberal attitude towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases.' This amendment requires that the defendant be given the benefit of the doubt in gray areas") (*quoting United States v. Thevis*, 474 F.Supp. 117, 124 (N.D.Ga.1979). Here, several vague features of the indictment leave the defendants "uncertain as to the nature of the charges against" them, unfairly deprive them the ability to meaningfully prepare for trial, and raise the unfair risk of surprise at trial, all warranting the filing of a bill of particulars.

A. *The indictment fails to provide sufficient factual details as to the identity of donors allegedly defrauded by the defendants*.

Here, the indictment fails to provide the defendants with sufficient information as to the identity of donors allegedly defrauded by the defendants. First, the indictment charges that the defendants fraudulently cashed four donation checks where the "donor" is listed as "Network For Good." *See* Indictment at ¶13. Three of those four checks are charged substantively in Counts 5-7. *See* Indictment at ¶87 (Counts 5-7). Network for Good is not a donor, though, but rather a

conduit for persons or entities to make contributions through Facebook. *See* Indictment at ¶13, n.3 ("Network for Good was the third-party payment processor that processed charitable donations made to VIB through Facebook."). As such, because Network For Good is not an actual donor, the defendants are left to guess which donors were alleged defrauded by the cashing of those four checks.

Second, the indictment alleges that VIB collected donations in 2018, 2019 and 2020 through PayPal and its bank account, and the indictment further alleges the defendants spent some percentage of these funds on personal matters. Indictment at ¶¶21-22, 24-25. There is no information in the indictment, however, for the defendants to even begin to discern the identities of any donors allegedly defrauded by any such transactions. From 2018 to 2020, VIB received donations from thousands of donors.

Third, Counts 9 and 10 likewise fail to sufficiently identify the donors at issue. Count 9 charges a $500 transfer to E-Trade, but the defendants are left to guess which donor or donors was defrauded by that transfer. Indictment at ¶87. Finally, as to Count 10, the indictment charges a transfer of funds in January 2021 for the payment of rent, *id*., but again there are no specifics or details from which the defendants could possibly discern the alleged victims of the charged fraud.

Without the identities of the donors allegedly defrauded, the defendants are without any basis to meaningfully prepare to defend this piece of the charged conspiracy or the substantive counts at issue. The vagueness of these allegations precludes the defendants from taking the most basic of steps in defending a federal prosecution of this nature: (1) interviewing the donors at issue, (2) identifying other potential witnesses, and/or (3) unearthing and examining relevant historical communications with the donors to determine the circumstances surrounding the

donations. As such, the defendants respectfully submit the requested bill of particulars is warranted. *See United States v. Wilson*, 493 F. Supp. 2d 364, 373–74 (E.D.N.Y. 2006) ("To the extent that the Government knows the identities of the alleged victims of these charged crimes and has not disclosed this information, a bill of particulars is warranted."); *United States v. Solovey*, 2005 WL 1279228, at *3 (W.D.N.Y. May 31, 2005) ("As the Court of Appeals opined by way of *dictum* and its citation of *United States v. Bennett,* 36 F.R.D. 103, 104 (E.D.S.C.1964), the government should name the alleged victims, when known, in the indictment containing charges such as those at issue herein. *United States v. Orena,* 32 F.3d 704, 714-15 (2d Cir.1994). Such requirement prevents the prosecution from feeling 'free to fill in this vital missing element-free, in a way, which is constitutionally grave whether or not it is highly probable, to name someone different from the one intended by the grand jury. A prosecutorial power 'to roam at large' in this fashion is not allowable.'" (*quoting United States v. Agone, supra* at 1261 *citing Russell v. United States,* 367 U.S. 749, 768-771 (1962)).

*B.* *The indictment fails to identify the false statements allegedly made to donors.*

In the "manner and means" section of the indictment, the government alleges that the defendants "[f]alsely represent[ed] VIB as a non-profit that did not pay salaries or other compensation to its CEO (CANNON-GRANT) or its Director (CLARK GRANT)," and filed "false reports with the AGO that concealed the fact that CANNON-GRANT and CLARK GRANT were receiving income and other forms of compensation from VIB." Indictment at ¶8(a), (f). While the indictment alleges that VIB filed Form 990's (for the years 2017, 2018, and 2019) with the Massachusetts Attorney General's Office declaring no salary, compensation or other benefits to the defendants, those forms were not filed until September 2020. Indictment at ¶26. As such, they cannot form the basis of fraud for any donations received prior to that date—and

all of the donations charged in the indictment precede September 2020. *See, e.g.*, Indictment at ¶13 (cashing of donation checks through Network For Good in 2018 and 2019); *id*. at ¶20 (Cambridge Black Lives Matter donation in August 2017); *id*. at ¶18 (identifying donations in 2018); *id*. at ¶22 (identifying donations in 2019); *id*. at ¶23 (identifying 2019 donation from "Cambridge-based foundation); *id*. at ¶24 (identifying donations in April 2020); *id*. at ¶25 (identifying expenditures in July 2020 and January 2021, but not tethering them to any specific donation). The indictment is otherwise silent as to ***<u>any</u>*** particular false statements to any donors that there would be no compensation or benefits to any member of VIB. Paragraphs 6 and 27 are the only other paragraphs in the indictment that touches upon alleged false statements as to donations, but they too fail to provide any of the necessary particulars. Indictment at ¶6 ("From 2017 through at least 2020, Cannon-Grant and Clark Grant presented themselves as uncompensated VIB Directors to donors and charitable institutions"); *id*. at ¶27 ( "[i]n soliciting donations and applying for grants and other charitable contributions, CANNON-GRANT and CLARK GRANT represented to the AGO, donors, and charitable institutions that funds received by VIB would be dispensed in accordance the terms and conditions of such grants and/or donations, as applicable, and, thus, such information was material to the institutions, entities, and individuals making such donations and/or grants to VIB").

Without the requested particulars regarding the allegedly false representations at issue the defendants are without any meaningful ability to prepare for trial as to these allegations. *See, e.g.*, *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir.1987) (reversing and remanding for new trial for district court's refusal to order particulars as to dates of alleged phony burglaries and the identity of false documents at issue, holding the "Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which

documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged"); *United States v. Trie*, 21 F.Supp.2d 7, 13, 21-22 (D.D.C.1998) (on counts charging making false statements to a government agency, court ordering the government to "provide information as to exactly what the false statements are, what about them is false, who made them, and how [the defendant] caused them to be made," holding that "without further elucidation [the defendant] will be unable to effectively prepare his defense"); *United States v. Holmes*, 2020 WL 666563, *8-9 (N.D.Cal.2020) (ordering government to provide (1) "specific implicit and explicit false and fraudulent misrepresentations in the advertisements and marketing materials, (2) what about them is false, (3) who made them, and (4) how Defendants caused them to be made"). "A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information." *Trie*, 21 F.Supp.2d at 21-22, *citing Rogers*, 617 F.Supp. at 1029; *United States v. Clifford*, 426 F.Supp. 696, 703 n.4 (E.D.N.Y.1976).

*C. Failure to identify other relevant parties.*

Lastly, the indictment fails to identify the directors, board members, auditors and/or bookkeepers who were intentionally deceived and/or from whom the defendants allegedly concealed material information. *See, e.g.*, Indictment at ¶¶8(c)-(d), 13. The defendants should not be left to guess the identities of individuals allegedly deceived and/or defrauded from the group of persons who served in these positions.

D. *Bill of Particulars is warranted here*.

While the defendants are not moving to dismiss at this point, it is worth noting the indictment at issue—as to the charge of fraudulent donations—is not dissimilar from the indictment at issue in *United States v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970). There, the First Circuit characterized the indictment as accusing the defendant of "making threats by an unstated means to an unnamed person on a particular day in a city of moderate size." *Tomasetta*, 429 F.2d at 979. Here, the defendants are charged with defrauding unnamed donors over the course of years by unspecified false statements. In *Tomasetta*, the court observed that a " defendant might seek to show that at the time in question he was not at the scene of the crime, in short, to establish an alibi," but "unless the defendant can demonstrate that he was not in the city of Worcester during the entire day in question this is impossible, as the precise time and place are not specified." *Tomasetta*, 429 F.2d at 980. Here, for example, the defendants might seek to show a particular donor at issue was aware of or even authorized some form of compensation or benefits to the defendants as a reward for their tireless efforts on behalf of the community, but that is impossible without knowing the identity of the donors at issue in the indictment. Lastly, in *Tomasetta*, the court offered that "[a]nother course open in a case such as this would be to demonstrate that the conduct which allegedly amounted to the communication of threats never took place, that a communication did take place but conveyed no threat, or that the meaning of an ambiguous communication has been misconstrued by the grand jury," and that "would ordinarily be done by seeking the writing at issue or witnesses to the conversation or incident in question." *Id*. Again, here, the defendants are precluded from mounting a defense centered around the communications at issue because the indictment is silent as to the alleged false representations regarding the subject donations. "[A]s the crime is essentially a speaking offense

it would be critical for a defendant to fix in his mind the substance of any conversation [or other communication] in issue as soon as possible." *Id.*

Comparing the indictment's allegations as to "grant" fraud is another way to illustrate the deficiencies of the indictment as to "donations." The indictment specifies two grants at issue. It alleges that VIB's grant application to a Massachusetts-based department store "represented to the Dept. Store Co. that (i) the $10,400 in grant funds were to be used to purchase meals for the needy children in the Boston Public school system; and (ii) that no VIB staff received compensation." Indictment at ¶9. Likewise, the indictment alleges that Ms. Cannon-Grant certified in her grant application to a Massachusetts District Attorney's Office that the funds would be used for a particular project and only for the purpose authorized by the District Attorney's Office. Indictment at ¶16. With knowledge of these specifics, the defendants can begin to prepare a defense to these allegations—*i.e.*, review the grant application materials, scrutinize the representations at issue, identify and interview potential relevant witnesses, and/or search for other potentially relevant communications. As to donations, the indictment leaves the defendants without any ability to take even these rudimentary steps.

## III. **Conclusion.**

Wherefore, the defendants respectfully request an order compelling the government to provide a bill of particulars that: (1) identifies the donor*s* allegedly defrauded by the defendants, as charged in the Count 1 conspiracy and the substantive scheme to defraud charged in Counts 5-7, 9-10; (2) particularizes the false statements at issue regarding the charged donations, including the manner and means by which the defendants "[f]alsely represented VIB as a non-profit that did not pay salaries or other compensation to its CEO [ ] or its Director [ ];" and (3) identifies the

VIB directors and financial bookkeeper/auditors from whom compensation was allegedly concealed.

Respectfully Submitted,
The Defendant,
Monica Cannon-Grant,
By Her Attorney,

**/s/ Robert M. Goldstein**
Robert M. Goldstein
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

Respectfully Submitted,
The Defendant,
Clark Grant,
By His Attorneys,

**/s/ Julie-Ann Olson**
Julie-Ann Olson
Joshua Hanye
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
Julie-Ann_Olson@fd.org
Joshua_Hanye@fd.org

Dated: July 11, 2022

**Certificate of Service**

I, Robert M. Goldstein, hereby certify that on this date, July 11, 2022, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including Assistant U.S. Attorneys Dustin Chao and Adam Deitch.

**/s/ Robert M. Goldstein**
Robert M. Goldstein