UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 22-CR-10057-MLW |
| | ) | |
| MONICA CANNON-GRANT, | ) | |
| CLARK GRANT, | ) | |
| Defendants | ) | |

### Defendants' Reply To Government Opposition To Motion For Bill of Particulars

Relying on the purported breadth of the indictment and discovery provided in this case, the government argues a bill of particulars is not necessary in this case. Because the government's opposition pleading only underscores the need for a bill of particular in this case, the Defendants hereby file this reply memorandum.

I. *Wire fraud requires proof that antecedent false statements caused donations, which requires identification of the donors and false statements at issue.*

First, the government opposition betrays a serious misunderstanding of controlling legal principles. Asserting that the indictment accuses the defendants of defrauding every one of the thousands of donors, Govt. Opp. at 6, the government argues there is no requirement that "false statements and misrepresentations had to have been made *to* victims of their fraud or that they had to have been made *prior to* (or at the same time as) when they were using VIB donations to fund their personal expenses," Govt. Opp. at 10-11 (emphasis in original). Instead, the government argues, "[u]nder Section 1343, the defendants merely had to devise or intend to devise a scheme or artifice to defraud – there is no requirement that the scheme involve false statements made directly to the intended victim of the fraud." Govt. Opp. at 11, citing *United States v. Porat*, 2022 WL 685686, at *21 (E.D. Pa. 2022) (citing *United States v. Greenberg*, 835

1

F.3d 295, 306 (2d Cir. 2016)).  While false statements may be actionable even if not made directly to the victim of the fraud (though there is some debate regarding that proposition), there is no doubt that the alleged false statements "must in fact cause the loss." *United States v. Christopher*, 142 F.3d 46, 53 (1st Cir.1998).  That is, the government is clearly required to prove that material, false statements were uttered (or material omissions occurred), and that those antecedent material misrepresentations/omissions caused individuals to provide donations to VIB.  It is perplexing, then, for the government to posit that no requirement exists to prove false statements were made "*prior to* (or at the same time as) when they were using VIB donations to fund their personal expenses." Govt. Opp. at 10-11.  There quite certainly exists a necessary order of events for the government to satisfy its burden of proof in this case: the alleged false statements must have occurred before the donation at issue and therefore before the defendants allegedly misspent the donation.  If there are no false statements made prior to an individual donation then any subsequent expenditure of those funds could not constitute wire fraud, as no false statement caused the donor to part with their property.

This is not some "nullification" defense, as the government wrongfully suggests.  *See* Govt. Opp. at 6, n.3 ("The defendants' belief that some donors acquiesced in having the defendants use their non-profit charitable donations as personal spending money may be useful in pursuing a nullification defense, but it does not entitle them to a bill of particulars").  It goes to the heart of the charged VIB scheme—if individuals provided donations without any reliance upon any alleged false statement, and/or if they provided funds knowing that some portion of those funds could and would be used by Ms. Cannon-Grant for personal expenses, that is not nullification—that is an affirmative defense to the charged fraudulent scheme.

2

The government seemingly conflates the concept of "convergence" with causation, an issue addressed directly in *United States v. Berroa*, 856 F.3d 141 (2017).  In that case, the defendants secured falsified test scores to obtain their medical licenses; the government alleged, *inter alia*, that the defendants "committed mail fraud by using the resulting licenses to practice medicine for financial gain."  *Berroa*, 856 F.3d at 148.  Relying on *Loughrin v. United States*, 134 S.Ct. 2384 (2014), the court reversed the mail fraud convictions, holding there was "insufficient evidence to support the conclusion that the defendants obtained money or property 'by means of' their alleged fraud…."  *Berroa*, 856 F.3d at 148.  Noting that the Loughrin Court held that "not every but-for cause will do," and that "the 'by means of' language requires that the defendant's fraud be 'the mechanism naturally inducing a bank ... to part with money," the court held that the Berroa defendants' "alleged fraud in obtaining their medical licenses cannot be said to have 'naturally induc[ed]' healthcare consumers to part with their money years later."  *Berroa*, 856 F.3d at 149-50, *quoting Loughrin*, 134 S.Ct. at 2393.

While there was much debate between the majority and dissenting opinions as to whether *Loughrin* imposes a convergence requirement in the mail and wire fraud statutes, important for present purposes is that all agreed that, under the mail and wire fraud statutes, the false statements at issue must in fact cause the loss.  *See Berroa*, 856 F.3d at 152 (reversing "the money or property mail fraud convictions [ ] based on the lack of a sufficiently direct causal nexus to satisfy *Loughrin*"); *id*. at 170 (dissenting in part) ("we acknowledged [in *Christopher*] that, in both the mail and wire fraud statutes, 'the deception must in fact cause the loss'") (*citing Chistopher*, 142 F.3d at 53).  In short, whether or not the law permits a conviction where the

3

false statements are not made "directly to" a victim, the government must prove that an individual relied upon a false statement in making a donation to VIB.[1]

For these same reasons, the government is wrong to suggest that "any instance in which the defendants took a contribution intended for VIB and used the proceeds to fund their own personal expenses represents an act in furtherance of the fraud." Govt. Opp. at 4, n.2. Again, using funds for personal expenses contravenes the wire fraud statute only if the money was secured "by means of" false statements and representations. *See Berroa*, 856 F.3d at 152. Obviously, not every dollar raised by Ms. Cannon-Grant and VIB could conceivably be directed to charitable endeavors, and this fact was routinely disclosed to potential donors. Indeed, as the indictment itself notes, in October 2020, VIB began to pay its employees, including Ms. Cannon-Grant, through a payroll processing company, *see* Indictment at ¶46, with the benefit of input and advice from an international law firm, with funds received from donors.

While the government's erroneous interpretation of relevant legal principles raises serious concerns regarding the integrity of the grand jury proceedings,[2] for present purposes it

---

[1] To the extent the government believes the law permits conviction if the defendant formed the intent to use funds for personal expenses after truthfully asserting the money would go towards a particular purpose, that is also flatly wrong, as the funds would not have been secured through a material misrepresentation or with fraudulent intent. *See Morissette v. United States*, 342 U.S. 246, 251–52 (1952) ("Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil"); *Gasho v. United States*, 39 F.3d 1420, 1429 (9th Cir. 1994) ("It is fundamental that a person is not criminally responsible unless criminal intent accompanies the wrongful act.... [The defendant must have] intended [to commit the crime] at the time that she [did].").

[2] *See United States v. Facteau*, 15-CR-10076-ADB, 2016 WL 4445741, at *5 (D. Mass. Aug. 22, 2016) ("That being said, the Court sees no reason why the prosecutors' instructions to the grand jury should be kept secret. What a prosecutor says to the grand jurors before asking them to return an indictment does not compromise the interests sought to be protected by grand jury secrecy. Further, allowing the instructions to be disclosed through the discovery process would help ensure the integrity of the grand jury process, incentivize prosecutors to be careful in

4

also underscores the need for the requested bill of particulars, particularly as to the alleged false statements and/or representations. The defendants use of donations to fund their personal expenses is not criminal absent some material, false statement or misrepresentation in securing those funds. And, for all the government's reliance on the alleged breadth and detail of the indictment, the issue here is not what the indictment says, but what it does <u>not</u> say. Here, the indictment does not identify or detail *a single* alleged false statement or misrepresentation (prior to the filing of the Form 990's in September 2020) to *a single* donor that could have conceivably caused any donor to part with their property. Certainly, the indictment does not specify where, when or how either defendant ever made any statement that 100% of every dollar raised through donations would go to charitable endeavors. The defendants must not be left to guess what allegedly false statements or misrepresentations caused a particular donor to part with their funds.

---

instructing a grand jury, and give some teeth to the grand jury's 'shield' function. *See United States v. Mandujano*, 425 U.S. 564, 573 (1976). It would also alert defense counsel to the possibility of an irregularity that could warrant a review of the grand jury process in a particular case. Given the length of time that it takes a case to get to trial, the stigma and harm done to a defendant simply by virtue of being indicted, even if later acquitted, and the largely unfettered power of the grand jury, the small step of allowing a defendant some visibility into the legal instructions given to the grand jury would help protect the defendant's rights, while fully maintaining the secrecy that is so fundamental to the functioning of our grand jury system. Nonetheless, given the circumstances of this case and the prevailing case law, this motion was denied").

II. *The government's sweeping description of its conspiracy also underscores the need for a bill of particulars here.*

The government's sweeping description of its conspiracy—that the defendants are charged with defrauding *every* donor to VIB—also underscores the need for bill of particulars here. The government argues that "the defendants are not accused of conspiring to defraud just one or two, or even a handful, of specific donors; rather, they are accused of embarking on a years-long scheme to defraud anyone – entities and individuals – who (1) contributed money to VIB, and (2) *were under the impression that their money would be used to further VIB's mission*." Govt. Opp. at 6 (emphasis added). The italicized language is precisely the problem in this case. How are the defendants to know just whom the government contends was "under the impression" that their money would be used—exclusively—to "further VIB's mission"? How are they to know exactly what "impression" those persons harbored and where that "impression" came from? And, how are they to know exactly what those unidentified persons believed that "mission" to be, and how or why they harbored that belief?

If the government is going to be held to the burden of proving a conspiracy to defraud **every** contributor to VIB, then the defendants will not advance its request for a bill of particular as to the identity of victims as to Count 1. If the government is going to be permitted to prove a narrower or smaller conspiracy at trial, then the government should be ordered to particularize the names of victim donors, at least to the extent any such names are known to the government. Indeed, the breadth of the conspiracy, as described by the government, only underscores the need for some particularization as to the alleged false statements and/or representations at issue. As noted, the indictment does not allege a single alleged false statement that pre-dates September 2020, other than the alleged representations to the specified grantors, which is not at issue here. To prove wire fraud, the government has to show beyond a reasonable doubt not only a

defendant's "knowing and willful participation in a scheme to defraud," but also that the scheme "'employ[ed] *material* falsehoods' too—*i.e.,* false or omitted statements that a reasonable person would consider important in deciding what to do." *United States v. Tum*, 707 F3d. 68, 72 (1st Cir.2013), *quoting Neder v. United States*, 527 U.S. 1, 16 (1999). Here, the indictment wholly fails to provide any notice as to the alleged material falsehoods to donors. If the government has its way, the defendants are left to try to interview thousands of donors and guess what statements allegedly caused them to fraudulently part with their funds. The Court should not countenance such an unfair process.[3]

>   III. *The issue presented here is not whether the defendants intended to defraud a specific victim, but rather what donors the government contends were defrauded.*

The government argument that it is not required to prove the defendants intended to defraud a specific victim is misplaced. *See* Govt. Opp. at 5. The cases relied upon by the government, wherein the courts dealt with sufficiency of evidence arguments, address whether or not the government must prove at trial that a defendant had a particular victim in mind when he or she carried out the scheme to defraud. *See United States v. Tum*, 707 F.3d 68, 75-76 (1st Cir. 2013); *United States v. Pena*, 910 F.3d 591, 598 (1st Cir. 2018); *United States v. Marr*, 760 F.3d 733, 743-44 (7th Cir. 2014). Whether or not the government must prove the defendant intended to defraud a specific victim when he or she carried out the charged scheme to defraud, the grand jury necessarily concluded there were victims of the charged scheme to defraud. One is an issue of proving subjective intent at trial (the defendant's state of mind), the other is the pretrial

---

[3] The issue is not institutional versus individual donors. *Cf.* Govt. Opp. at 6 ("the defendants' argument here hinges on their attempt to differentiate institutional from individual donors, as they concede that the indictment adequately addresses the "particulars" with respect to the former"). Rather, it is grants vs donations, as the indictment identifies the grants at issue and the allegedly false representations made to grantors.

7

identification of an objective fact (alleged victims of the charged scheme) critical to a defendant's ability to meaningfully prepare for trial.  Even if the government need not prove the defendant had a particular person in mind in carrying out a scheme to defraud, when the government secures an indictment the grand jury must have in mind the alleged victims of the fraudulent scheme, and the government should be compelled to identify the alleged victims of the scheme, at the very least those known to the government.  Indeed, it is worth noting that in each of the three cases relied upon by the government, the identity of the alleged victims was known and identified.  *See Tum,* 707 F.3d at 75 (framing the issue as whether "the government have to prove that HHCS knew when it teamed up with Tum that the specific object of the conspiracy was a wire fraud against *Unum*"); *Pena*, 910 F.3d at 595 ("each of those wire transactions was allegedly made, as payment for the fraudulent services, by one of the immigrant victims of the scheme either to Rocheford or to another person that the schemers had designated to receive the funds"); *Marr*, 760 F3d at 743 ("He argues that the instructions were erroneous because they did not require the government to prove that Marr specifically intended to defraud a financial institution, *i.e.*, Palos Bank").  Moreover, even if "there is no requirement in a wire fraud or wire fraud conspiracy case for the government to identify all victims, or even specific victims, in the indictment," Govt. Opp. at 5, that does not mean the Court should not exercise its discretion and order the government to provide that information in a bill of particular.  Indeed, the purpose of a bill of particulars is to supplement a constitutionally sound indictment.  *See, e.g., United States v. Barbato*, 471 F.2d 918, 921 (1st Cir.1973) (noting that the remedy for an individual charged with a federal criminal offense who finds "himself uncertain as to the nature of the charges against him" is "to file a motion for a bill of particulars" in the trial court); *United States v. Upton*, 856 F. Supp. 727, 740–41 (E.D.N.Y. 1994) ("a bill of particulars cannot cure a

constitutionally defective indictment, *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), but '[a] bill of particulars is appropriate when the indictment is insufficient to permit the preparation of an adequate defense'") (*quoting United States v. DiCesare,* 765 F.2d 890, 897 (9th Cir.1985)); *United States v. Willis*, 475 F. Supp. 2d 269, 274 (W.D.N.Y. 2007) ("Although a bill of particulars will not itself cure a duplicitous indictment, it is appropriate to order a bill of particulars 'where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused'") (internal citations omitted) (*quoting* U*nited States v. Torres,* 901 F.2d 205, 234 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990)).[4]

> IV. *The government should not be permitted to obscure known, critical information by providing a blizzard of discovery.*

Finally, the government's reliance on the scope of discovery, and an email it sent during the conferring stage, is equally unpersuasive. As to the discovery production, the government asserts that "[w]hen production of automatic discovery is complete (just one or two additional installments are anticipated), the government will have disclosed all information in its possession pertaining to the identity of any entity or individual who contributed to VIB, to misrepresentations made by the defendants in furtherance of their alleged crimes, and the identities of former board members and bookkeepers to whom the defendants lied about their own compensation." Govt. Opp. at 15. "Put differently," the government asserts, "between the detailed allegations contained in the indictment and through completion of automatic discovery,

---

[4] The government argument that the defense has access to the entire list of donors misses the mark. Govt. Opp. at 9. It is not that the defendants don't have access to this information, it is that the universe of donors likely exceeds 10,000 individuals. Absent the Court exercising its discretion in favor of a bill of particulars, the defendants are without any meaningful ability to prepare and defend the charged VIB scheme to defraud.

the defendants will have in their possession all of the information the government has with respect to what they purportedly seek in their motion for a bill of particulars." If the government knows the alleged false statements at issue and/or the identity of the alleged victims, it should not be permitted to hide them in a discovery universe "consisting of over 249,000 individual items with 30,061 Bates-stamped pages or files and over 30 GB of total data." Govt. Opp. at 15. The defendants do not seek to unfairly or improperly "obtain a preview of the government's legal strategy and to cabin the evidence and arguments the government may use at trial," Govt. Opp. at 2-3, nor do they seek to employ a bill of particulars "as an end-run around discovery requests," Govt. Opp. at 3, or to improperly secure advance "'disclosure of evidence, witnesses to be offered at trial, or the government's legal theories.'" Govt. Opp. at 3, *quoting United States v. Perry*, No. 12-CR-10293-DJC, 2013 WL 3158078, at *4 (D. Mass. June 19, 2013) (Dein, M.J.). Nor do the defendants seek to cabin or limit the government's discretion in its case-in-chief. To the contrary, the defendants merely seek particularization as to the alleged victims and the alleged false statements, to the extent they are known to the government, so they have a fair opportunity to prepare their defense. To the extent the government's case evolves or other victims become known, or other false statements become known, the government can supplement its bill of particulars. The Court should not permit the government, however, to play a shell game that unfairly prevents the defendants from mounting a meaningful defense to the indictment.[5]

---

[5] The defendants do not contend that the indictment must contain a "complete summary of all of the evidence which the government intends to use to sustain the averments of the indictment." Govt. Opp. at 10. They do believe, though, that notions of fundamental fairness and due process warrant disclosing the identities of known victims and the false statements allegedly made to them.

As to the government's email during the conferring stage, it was entirely unhelpful in elucidating the contours of the indictment. For example, the government wrote that the "victims of the defendants' fraud also include "*any* institutional or individual donors to Violence in Boston whose funds (a) were intended to support the work of the non-profit, but (b) were instead used to fund the defendants' own personal expenses." Email dated July 11, 2022 (emphasis added). This is obviously not helpful in terms of identifying alleged victims. Likewise, as to false representations, the government's email did not identify a single false statement other than the tax filings cited in the indictment and "applications submitted by the defendants to third-party organizations that likewise included representations about VIB's lack of compensation for the defendants also contained false statements." Again, this does not help to identify the alleged false statements to donors.

| | |
|---|---|
| Respectfully Submitted,<br>The Defendant,<br>Monica Cannon-Grant,<br>By Her Attorney, | Respectfully Submitted,<br>The Defendant,<br>Clark Grant,<br>By His Attorneys, |
| **/s/ Robert M. Goldstein**<br>Robert M. Goldstein<br>20 Park Plaza, Suite 1000<br>Boston, MA 02116<br>(617) 742-9015<br>rmg@goldstein-lawfirm.com | **/s/ Julie-Ann Olson**<br>Julie-Ann Olson<br>Joshua Hanye<br>Federal Public Defender Office<br>51 Sleeper Street, 5th Floor<br>Boston, MA 02210<br>(617) 223-8061<br>Julie-Ann_Olson@fd.org<br>Joshua_Hanye@fd.org |

Dated: August 2, 2022

**Certificate of Service**

    I, Robert M. Goldstein, hereby certify that on this date, August 2, 2022, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including Assistant U.S. Attorneys Dustin Chao and Adam Deitch.

                                                **/s/ Robert M. Goldstein**
                                                Robert M. Goldstein