UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.   22-cr-10057-MLW |
| | ) | |
| v. | ) | Violations: |
| | ) | |
| (1) MONICA CANNON-GRANT and | ) | **Counts One - Three**: Wire Fraud Conspiracy |
| (2) CLARK GRANT, | ) | (18 U.S.C. § 1349) |
| | ) | |
| Defendants | ) | **Count Four:** Conspiracy |
| | ) | (18 U.S.C. § 371) |
| | ) | |
| | ) | **Count Five:** Mail Fraud; Aiding and Abetting |
| | ) | (18 U.S.C. §§ 1341 and 2) |
| | ) | |
| | ) | **Counts Six - Twenty-Two**: Wire Fraud; Aiding and Abetting |
| | ) | (18 U.S.C. §§ 1343 and 2) |
| | ) | |
| | ) | **Count Twenty-Three**: Making False Statements to a Mortgage Lending Business; Aiding and Abetting |
| | ) | (18 U.S.C. §§ 1014 and 2) |
| | ) | |
| | ) | **Counts Twenty-Four - Twenty-Five**: Filing False Tax Returns |
| | ) | (26 U.S.C. § 7206(1)) |
| | ) | |
| | ) | **Counts Twenty-Six - Twenty-Seven**: Failure to File Tax Returns |
| | ) | (26 U.S.C. § 7203) |
| | ) | |
| | ) | **Wire/Mail Fraud Forfeiture Allegation**: |
| | ) | (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461) |
| | ) | |
| | ) | **Mortgage Fraud Forfeiture Allegation**: |
| | ) | (18 U.S.C. § 982(a)(2)(A)) |

SUPERSEDING INDICTMENT

At all times relevant to this Superseding Indictment:

1

General Allegations

1.      Defendant Monica CANNON-GRANT was a resident of Boston, Massachusetts. CANNON-GRANT was the founder and Chief Executive Officer of Violence in Boston ("VIB"), a Massachusetts entity that CANNON-GRANT formed in at least as early as 2017 to raise money to reduce violence, raise social awareness, and aid community causes, among other purposes.   In October 2020, CANNON-GRANT began issuing herself weekly VIB payroll of approximately $2,788 per week, earning approximately $25,096 in 2020 and $170,092 in 2021.

2.      Defendant CLARK GRANT was a resident of Boston, Massachusetts.   CLARK GRANT was a Director of VIB; he was CANNON-GRANT's spouse; and he resided with CANNON-GRANT at their Boston residences ("Boston Residence 1" from 2017 to mid-2020, and "Boston Residence 2" from mid-2020 to mid to late 2021).   CLARK GRANT was also a full-time employee for a commuter service company (the "Commuter Service Co.") starting in July 2018, when he was initially hired as a track laborer.   From 2018 through 2021, CLARK GRANT was a full-time employee with the Commuter Service Co., holding various positions that included track laborer, assistant track foreman, and track foreman; and reported Commuter Service Co. income of approximately of $22,026, $57,745, $60,850, and $41,354 for the years 2018, 2019, 2020, and 2021, respectively, on his personal federal income tax returns.

3.      From 2017 to 2021, CANNON-GRANT and CLARK GRANT, through VIB fundraising, solicited and received over a million dollars in donations and grants from individuals, charitable institutions, and other entities.   The bulk of these monies were deposited in a VIB account with Bank of America, whose headquarters are in North Carolina, and which conducts financial transactions in interstate commerce (the "VIB Bank Account"), and accounts with PayPal, an internet-based financial service headquartered in California that conducts financial transactions in

interstate commerce (the "VIB PayPal Account").   Although VIB had a Treasurer and other Directors, CANNON-GRANT and CLARK GRANT exercised exclusive control and authority over the VIB Bank Account and the VIB PayPal Account.

4.      From 2017 to mid-2020, VIB had no physical location and was based out of CANNON-GRANT's and CLARK GRANT's Boston Residences 1 and 2.[1]   After incorporating in November 2017 as a Massachusetts non-profit corporation, VIB was required to file tax forms, among other things, with the Massachusetts Attorney General's Office ("AGO") that disclosed VIB's yearly revenue and expenses, including any and all compensation paid to VIB officers and directors.

5.      During the period from 2017 through 2021, CANNON-GRANT, CLARK GRANT, and others known and unknown to the Grand Jury, conspired to (i) defraud VIB donors and grant issuers by using VIB funds to personally enrich CANNON-GRANT and CLARK GRANT; (ii) defraud the Massachusetts Department of Unemployment Assistance ("MA DUA") by collecting unemployment assistance while receiving VIB monies and other forms of income; (iii) defraud the City of Boston Office of Housing Stability by falsely misrepresenting their household income to obtain thousands of dollars in housing assistance; and (iv) make false statements to an Illinois-based mortgage lender (the "Mortgage Lender") by falsely presenting VIB assets as personal assets, and making other false statements and material omissions when applying for a home mortgage loan to purchase a home in Bristol County in July 2021 (the "Bristol Residence").

---

[1] In September 2020, VIB opened a community center in Hyde Park from which it conducted its operations.

## The VIB Wire Fraud Conspiracy and Scheme to Defraud

Overview of the VIB Wire Fraud Conspiracy and Scheme to Defraud

6.      Beginning at least as early as 2017, CANNON-GRANT, CLARK GRANT, and co-conspirators known and unknown to the Grand Jury, agreed to use VIB as a vehicle to personally enrich themselves and their designees.    For the period of 2017 through at least 2020, CANNON-GRANT and CLARK GRANT represented themselves as uncompensated VIB Directors to donors and other charitable institutions.    In reality, CANNON-GRANT and CLARK GRANT, who exercised exclusive control over VIB financial accounts, used VIB funds to pay for personal expenditures from 2017 through early 2021.    CANNON-GRANT and CLARK GRANT diverted VIB monies to themselves through cash withdrawals, cashed checks, wire transfers to their personal bank accounts, and debit purchases, among other methods.

Object and Purpose of VIB Wire Fraud Conspiracy

7.      The object of the VIB Wire Fraud Conspiracy was for CANNON-GRANT and CLARK GRANT to use VIB as a vehicle to solicit and receive charitable donations, grants, and other funds for VIB's non-profit purposes (*e.g.*, support community causes, raise social awareness), and to instead use a substantial amount of funds donated to support VIB's mission to pay for personal expenses of CANNON-GRANT, CLARK GRANT, and their designees.    The principal purpose of the conspiracy and scheme to defraud was to personally enrich CANNON-GRANT and CLARK GRANT with VIB money, while concealing such personal expenditures from VIB directors, officers, and others.

4

<u>Manner and Means of the VIB Conspiracy and Scheme to Defraud</u>

8.      Among the manner and means by which CANNON-GRANT, CLARK GRANT, and their co-conspirators carried out the conspiracy and the scheme to defraud were the following:

   a.   Falsely representing VIB as a non-profit that did not pay salaries or other compensation to its CEO (CANNON-GRANT) or its Director (CLARK GRANT);

   b.   Applying for public- and private-funded grants and donations to be used for VIB charitable purposes, but instead using portions of grant and donation money to pay for CANNON-GRANT's and CLARK GRANT's personal expenses;

   c.   Concealing from other VIB directors and VIB's financial bookkeepers/auditors the fact that CANNON-GRANT and CLARK GRANT were using VIB funds to pay personal expenditures through their control of the VIB Bank Account and VIB PayPal Accounts;

   d.   Concealing from other VIB directors and VIB's financial bookkeepers/auditors the fact that CANNON-GRANT and CLARK GRANT were secretly cashing and depositing VIB donation/grant checks to enrich themselves;

   e.   Making thousands of dollars of cash withdrawals from the VIB Bank Account to fund personal expenses and avoid a financial paper trail; and

   f.   Filing false reports with the AGO that concealed the fact that CANNON-GRANT and CLARK GRANT were receiving income and other forms of compensation from VIB.

<u>Acts in Furtherance of the VIB Wire Fraud Conspiracy and Scheme to Defraud</u>

*The Department Store Company Grant Fraud*

9.      In September 2017, CANNON-GRANT applied for and received a $10,400 grant on behalf of VIB from a Department Store Company based in Massachusetts (the "Dept. Store Co.").   In VIB's application for the grant, CANNON-GRANT represented to the Dept. Store Co. that (i) the $10,400 in grant funds were to be used to purchase meals for needy children in the Boston public school system; and (ii) that no VIB staff received compensation.   As of September 2017, CANNON-GRANT had a zero balance in her personal checking account.

10.     Because VIB did not have tax-exempt non-profit status at the time, CANNON-GRANT directed the Dept. Store Co. to issue the $10,400 to a fiscal conduit that had non-profit, tax-exempt status, and which was located in Charlottesville, Virginia (the "VA Church").   In October 2017, CANNON-GRANT informed the VA Church that VIB needed the funds to make the food distributions, and directed the VA Church to issue a check payable to "Monica Cannon/Violence in Boston," and mail it to her address at Boston Residence 1.

11.     On or about October 17, 2017, the VA Church informed CANNON-GRANT that it received the $10,400 check in the mail from the Dept. Store Co., and a few days later the VA Church issued a $10,400 check payable to "Monica Cannon/Violence in Boston" and mailed it to CANNON-GRANT at Boston Residence 1.

12.     On or about October 28, 2017, CANNON-GRANT cashed the $10,400 check from the VA Church at a bank in Alpharetta, Georgia.   On or about October 31, 2017, CANNON-GRANT used cash proceeds from the $10,400 VA Church check to purchase $3,111 in money orders to pay for CANNON-GRANT's and CLARK GRANT's rent arrears at Boston Residence 1.   CANNON-GRANT and CLARK GRANT never disclosed to other VIB directors or financial bookkeepers/auditors that CANNON-GRANT received and cashed a $10,400 check donation to VIB from the VA Church.

*CANNON-GRANT and CLARK GRANT Cash VIB Donation Checks*

13.     Unbeknownst to VIB's other board members and financial bookkeepers/auditors, CANNON-GRANT and CLARK GRANT cashed several donation checks that were payable to VIB at a Dorchester check cashing business, whose headquarters were based in Illinois ("DCB"), and whose check cashing transactions were processed in interstate commerce (including Illinois and Ohio).   On several occasions, cash deposits were subsequently made to CANNON-GRANT's

personal checking account.[2]   On another occasion, CLARK GRANT used cashed check proceeds

to pay for school dues for CANNON-GRANT's children.   These DCB transactions included the

below:

| Donor | Check Amount | Cashed by (date) | Related Info |
|---|---|---|---|
| Network for Good[3] | $160 | Cannon-Grant (8/20/2018) | Personal checking balance (-$12) |
| Network for Good | $1,140 | Cannon-Grant (9/24/2018) | $1200 cash deposit to personal checking account (9/24/2018) |
| Network for Good | $488 | Clark Grant (12/20/2018) | $240 money order purchases at DCB to pay school dues (12/20/2018) |
| Network for Good | $1,534.51 | Cannon-Grant (1/23/2019) | $1,120 cash deposit to personal checking account (1/23/2019) |
| City of Cambridge (CWO) | $500 | Cannon-Grant (8/8/2019) | $500 cash deposit to personal checking account (8/20/2019) |
| Total | $3,822.51 | | |

*The District Attorney's Office Grant Fraud*

14.     In May 2019, a Massachusetts District Attorney's Office ("MDAO") invited non-profit

organizations to apply for Community Reinvestment Grants (up to $10,000 each) that were funded

with money from the MDAO's asset forfeiture fund.   Applicants were advised that (i) the grant

money was to be used for violence prevention and/or substance abuse programs; (ii) grant money

was not to be used to pay for salary, staff time, or food costs, among other things; and (iii)

applications were due June 7, 2019.

15.     On or about June 1, 2019, CANNON-GRANT booked a hotel reservation for three nights

and two rooms (July 11 to July 14, 2019) at a Sonesta Suites in Columbia, MD, with a total cost

of approximately $1,211.   June 2019 bank statements showed that CANNON-GRANT had a

---

[2] In or about 2018, CANNON-GRANT and CLARK GRANT opened personal checking accounts at Bank of America.   References to CANNON-GRANT's and CLARK GRANT's personal checking accounts from 2018 through 2021 refer to these accounts.
[3] Network for Good was the third-party payment processor that processed charitable donations made to VIB through Facebook.

closing balance of approximately $1.35 in her personal checking account; CLARK GRANT had a closing balance of approximately $21.01 in his personal checking account; and the VIB Bank Account had a balance of approximately negative -$84.20 on June 1, 2019.

16.     On or about June 6, 2019, VIB emailed its grant application for $10,000 to the MDAO, in which CANNON-GRANT certified that:

    a.  The grant funds were to be used for a project in September 2019 in which "Violence in Boston plans to bring 10 at risk young men and 2 adult youth workers from the under-served community of Roxbury on a three day Violence Prevention Retreat in Philadelphia.  The purpose of this trip to give these young men exposure to communities outside of the violence riddled neighborhoods that they navigate daily.  During this retreat we will focus on community building activities, developing coping skills to deal with trauma and violence and focus on increasing morale;" and

    b.  "The undersigned [CANNON-GRANT] agrees that funds awarded will be used only for the purpose authorized by the [MDAO].  The undersigned further acknowledges that an after action report will be provided to the [MDAO] at the completion of the project/program."

17.     On or about June 28, 2019, at a ceremony at the MDAO, CANNON-GRANT accepted the MDAO grant award to VIB in the form of a $6,000 check payable to VIB.  The $6,000 MDAO check was deposited to the VIB Bank Account the same day.  July 2019 VIB Bank Account records showed that CANNON-GRANT and CLARK GRANT used the $6,000 MDAO check to pay for, among other things, $145 at a Boston nail salon; over $400 in grocery and Walmart purchases in Columbia, MD; hundreds of dollars in meal costs in Connecticut, New Jersey, and Maryland, including at Bubba Gump Shrimp Co., Shake Shack, and other restaurants; $1,211 in charges at the Sonesta Suites, Columbia, MD; hundreds of dollars in fuel, parking, and car rental costs; and hundreds of dollars in ATM withdrawals.  By July 31, 2019, the VIB Bank Account had a negative balance of -$552.38.

18.     None of the July 2019 VIB Bank activity showed transactions in Philadelphia, PA; nor did the September 2019 VIB Bank Account statement.   In a July 15, 2019 email to a member of a Cambridge Women's Organization ("CWO"),[4] CANNON-GRANT explained that the reason she did not respond to CWO emails in the days leading up to July 15 was because "I was on vacation."

19.     Neither CANNON-GRANT nor CLARK GRANT disclosed to VIB directors that they had used the MDAO $6,000 grant to pay for their July 2019 personal vacation to Columbia, MD. CANNON-GRANT and CLARK GRANT never submitted an "after action report" to the MDAO that disclosed how the $6,000 MDAO asset forfeiture grant was spent.

*The Boston Resiliency Fund Grant Fraud*

20.     In March 2020, in response to the COVID-19 pandemic, the City of Boston launched the Boston Resiliency Fund ("BRF"), a philanthropic fund that the City created to ensure that Boston residents had access to food, technology, and health care services throughout the pandemic. From approximately March 2020 to June 2020, the BRF received approximately $35,000,000 in donations, which the City of Boston then distributed to non-profits and other charitable organizations through a grant process.

21.     To apply for a BRF grant, organizations were required to submit an application that included, among other things, information about the non-profit/charitable organization, the total funds requested, a budget detailing how funds would be spent, and a copy of the applicant's most recent IRS Form 990 (generally, a tax disclosure form that provides the public with financial information about non-profits/tax exempt organizations, *e.g.*, what funds were raised and how they

---

[4] CANNON-GRANT's email to the CWO related to a $500 donation that the CWO planned to give to VIB to support the Black Women & Marginalized Genders conference.   As described above, however, upon receiving the CWO's $500 donation in August 2019, CANNON-GRANT cashed the CWO check at DCB.

were spent) or equivalent information.   The veracity and accuracy of this information was material to the City of Boston's decision-making process in awarding BRF grants.

22.     On or about April 23, 2020, VIB submitted a BRF grant application to the City of Boston, which requested $95,810 in funds to pay for the preparation and delivery of four weeks of hot meals to Boston residents.   Because VIB did not have a filed Form 990, at the City's request, VIB's bookkeeper provided VIB financial information to the City via email (cc'ing CANNON-GRANT), which included a two-year financial summary that purported to document VIB's income and expenses for 2018 and 2019 (the "VIB 2-Year Summary").

23.     The VIB 2-Year Summary was false in material respects, including the false representations that all donations had been used toward charitable purposes, and that no expenses went toward paying (CANNON-GRANT and CLARK GRANT) salaries or personal benefits to VIB officers.   CANNON-GRANT knew that the VIB 2-Year Summary was false because she knew that certain donations were not used for charitable purposes (*e.g.*, the MDAO $6,000 grant in 2019), and she knew that she had used VIB money during this two-year period to pay for personal expenditures (*e.g.*, personal auto loan payment and school payments for CANNON-GRANT's family members).

24.     On or about April 29, 2020, the BRF awarded VIB a $53,977 grant to provide approximately 20,000 hot meals in a one-month period.   (BRF grant funds were disbursed through Citizens Bank, a bank based in Rhode Island that processed customer check transactions through interstate wire communications.)   Per the BRF grant agreement, VIB was required to use the grant for its stated purpose (*i.e.*, provide hot meals) and to provide the BRF with a written account of how the funds were used at its conclusion.

25.     The BRF $53,977 grant check was deposited to the VIB Bank Account on or about May 4, 2020.   At the time of the deposit, the VIB Bank Account had a balance of approximately $187.72 and CANNON-GRANT's personal checking account had a negative balance of approximately $199.94.   Within days of the deposit, from May 8, 2020 to May 11, 2020, CANNON-GRANT withdrew $30,000 in ATM and teller cash withdrawals from the VIB Bank Account.   Thereafter, on May 12, 2020, CANNON-GRANT made a $5,200 cash deposit to her personal checking account, and on May 15, 2020, CANNON-GRANT deposited another $1,000 in cash to her personal checking account.

26.     Following the deposit of the $53,977 BRF grant check to the VIB Bank Account, on or about May 8, 2020, CANNON-GRANT withdrew $1,099.32 in VIB Bank Account funds to pay towards her personal auto loan; and on or about May 14, 2020, CANNON-GRANT withdrew another $566 in VIB Bank Account funds to pay towards her personal auto insurance.   CANNON-GRANT disclosed none of this to the BRF.

27.     Instead, on or about December 2, 2020, CANNON-GRANT falsely reported to the BRF that all of the $53,977 grant had been appropriately expended.

*Additional VIB Fraud*

28.    On or about August 22, 2017, a Cambridge Black Lives Matter organization ("BLMC") made a $3,000 PayPal donation to VIB to support VIB's program to feed needy children.   Two days later, on August 24, 2017, CANNON-GRANT and CLARK GRANT transferred those funds via a VIB PayPal payment of $3,400 to a bank account belonging to one of CANNON-GRANT's family members ("FM-1").   Then on August 28, 2017, a cash withdrawal of $3,400 was made from FM-1's bank account. CANNON-GRANT and CLARK GRANT did not inform the other VIB directors or VIB's financial auditors/bookkeepers that BLMC's $3,000 donation had been diverted to one of their family members and withdrawn in cash.

29.    In 2018, VIB collected donations of approximately $23,024 in PayPal payments and $25,207 in deposits to the VIB Bank Account.   The 2018 withdrawals and debits from the VIB Bank Account largely reflected spending on personal items.   VIB Bank Account withdrawals by both CANNON-GRANT and CLARK GRANT (approximately $17,822 in total) reflected spending for cell phone bills, Amazon purchases, meals, gas, auto insurance, Uber charges, ATM cash withdrawals, as well as purchases at Old Navy, TJ Maxx, the Apple Store, and nail salon charges.   VIB PayPal Account records showed a similar pattern in 2018, with the majority of debits (approximately $16,445 in total) going to pay for meals, gas, car insurance, purchases at Amazon and Macy's, and ATM cash withdrawals.

30.    In 2019, VIB collected donations of approximately $91,574 in PayPal payments and $32,769 in deposits to the VIB Bank Account.   With respect to the VIB PayPal Account, there was a total of approximately $54,614 in withdrawals, which included over $6,000 in ATM cash withdrawals, and thousands of dollars spent on meals, groceries, Amazon, Uber, and for goods and services from Boston area nail salons.   2019 debits from the VIB Bank Account (approximately

$38,595 in total) included CANNON-GRANT's and CLARK GRANT's purchases at the Wrentham Outlet Mall (*e.g.*, Polo, Timberland, Lane Bryant, True Religion during December 2019), Walmart, and Amazon purchases; and thousands of dollars spent on meals (*e.g.*, UberEats), Uber, personal car payments and auto repairs.

31.     In August 2019, CANNON-GRANT received another $500 donation from a different Cambridge-based foundation ("CBF") to support the Black Women & Marginalized Genders conference to be co-hosted by VIB that month.   Instead of depositing the $500 CBF check into the VIB Account, CANNON-GRANT deposited the check into her personal checking account on or about August 13, 2019.   On the date of the deposit, CANNON-GRANT's personal checking account had an account balance of approximately $35.22.

32.     In 2020, VIB began to collect significantly more money in charitable donations. For example, the VIB Bank Account received approximately $50,000 in donations in the month of April 2020, alone, its largest monthly collection amount at the time.   With this larger influx of VIB funds, CANNON-GRANT and CLARK GRANT began to help themselves to greater amounts from the VIB Bank Account by engaging in the following bank transactions on the (approximate dates):

    a.  ATM cash withdrawals totaling $16,000, including withdrawals of $1,000 (4/8/2020); $1,000 (4/10/2020); $1,500 (4/13/2020); $8,000 (4/14/2020); and $4,500 (4/23/2020[5]);

    b.  Transferring $900 to a Robinhood account in CANNON-GRANT's name (4/14/2020, 4/22/2020); and $500 to an E*Trade account in CANNON-GRANT's name (4/14/2020); and

    c.  Paying for approximately $1,720 in outstanding NY/NJ EZ-Pass tolls and fees owed by CANNON-GRANT dating back to August 2017 (4/17/2020), and $397.30

---

[5] On this date, April 23, 2020, CANNON-GRANT made a $3,000 cash deposit to her personal checking account.

in MA EZ-Pass tolls that included toll charges for CLARK GRANT's travel to and from his job at the Commuter Service Co. (4/20/2020).

33.     In addition to the VIB Bank Account, CANNON-GRANT and CLARK GRANT took monies from the VIB PayPal Account throughout 2020 and continuing into 2021 to purchase a car for FM-1; to pay rent for Boston Residence 2; and to pay for hundreds of UberEats orders for food deliveries to Boston Residences 1, 2, and their home at the Bristol Residence (beginning in approximately 2021, discussed further below).   CANNON-GRANT and CLARK GRANT VIB PayPal Account transactions included:

    a.  On or about May 5, 2020, CANNON-GRANT and CLARK GRANT transferred $234.35 from the VIB PayPal Account toward the purchase of custom Nike Air Max 90 sneakers to be delivered to Boston Residence 1.

    b.  On or about June 30, 2020, CANNON-GRANT and CLARK GRANT transferred $652.39 from the VIB PayPal Account toward the purchase of Samsung cellphones for members of their household.

    c.  On or about July 2, 2020, CANNON-GRANT and CLARK GRANT transferred $2,454.33 from the VIB PayPal Account to purchase three iPhone 11s for members of their household, including FM-1.

    d.  On or about July 6, 2020, CANNON-GRANT and CLARK GRANT transferred $9,700 from the VIB PayPal Account to CLARK GRANT's personal checking account.   On July 6, 2020, CLARK GRANT used his personal checking account debit card to pay a Boston car dealership $9,652.65 for a 2012 Honda sedan for FM-1.

    e.  On or about December 22, 2020, CANNON-GRANT's and CLARK GRANT's personal checking account balances were approximately $300.26 and $796.70, respectively.   Because these funds were insufficient to pay the monthly rent ($4,200) for Boston Residence 2, on or about January 1, 2021, CANNON-GRANT transferred $5,000 from the VIB PayPal account to her personal checking account to make the monthly rent payment for Boston Residence 2.

34.     In or about September 2020, VIB filed its 2017, 2018, and 2019 IRS Tax Form 990-EZ (short form income tax return for exempt organizations) with the AGO.   For each of the submitted filings, CANNON-GRANT signed and declared under penalty of perjury that the Form 990-EZ

return was true, correct, and complete.   These Forms 990-EZ, and related filings, for 2017 through 2019, declared, among other things, that CANNON-GRANT and CLARK GRANT collected no salaries, compensation, or other benefits from VIB during the respective reporting periods:

| Tax Year | 2017 | 2018 | 2019 |
|---|---|---|---|
| Filing Date | 9/9/2020 | 9/9/2020 | 9/9/2020 |
| Reporting period | 11/1/2017 – 11/30/2017 | 12/1/2017 – 11/30/2018 | 12/1/2018 – 11/30/2019 |
| VIB reported contributions | $5,300 | $45,302 | $85,403 |
| **VIB reported salaries, compensation, and benefits** | **$0** | **$0** | **$0** |
| VIB reported expenses | ($7,290) | ($40,232) | ($85,848) |
| Total Net Assets | ($1,990) | $5,070 | $4,625 |

35.     In soliciting donations and applying for grants and other charitable contributions, CANNON-GRANT and CLARK GRANT represented to the AGO, donors, and charitable institutions that funds received by VIB would be dispensed in accordance with the terms and conditions of such grants and/or donations, as applicable, and, thus, such information was material to the institutions, entities, and individuals making such donations and/or grants to VIB.

### **The Pandemic Unemployment Assistance Wire Fraud Conspiracy and Scheme to Defraud**

### General Allegations

36.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") created a new temporary federal unemployment insurance program to provide Pandemic Unemployment Assistance ("PUA") benefits.   PUA provided federally funded unemployment benefits for individuals who were not eligible for traditional unemployment insurance benefits or other types of unemployment compensation (*e.g.*, self-employed individuals, independent contractors, gig economy workers).

15

37.     MA DUA was the state agency that administered PUA in Massachusetts.   MA DUA received CARES Act funds from the U.S Treasury into a People's United Bank account.   The monies paid to PUA claimants were then transmitted via wire communications from Connecticut to the claimant's designated bank account.

38.     To receive PUA benefits, Massachusetts claimants were required, as applicable, to (i) create an online account to submit the application (also known as PUA registration); (ii) provide eligibility criteria; (iii) provide the reason(s) for unemployed status (*e.g.*, how COVID-19 affected employment); and (iv) certify that all the statements in the application were true, among other things.   PUA claims submitted online to MA DUA were processed via a server in Colorado.

39.     To continue to receive weekly PUA benefits, claimants were required to submit weekly certifications online to MA DUA that confirmed that the applicant (i) did not work during the weekly reporting period; and (ii) did not receive any income during the weekly reporting period. It was material to MA DUA that it received truthful, complete, and accurate information from applicants in the PUA registration, weekly certification, and eligibility verification process, so that PUA funds were disbursed to qualified and eligible recipients.

### Overview of the PUA Wire Fraud Conspiracy and Scheme to Defraud

40.     Beginning in or about May 2020 and continuing through 2021, CANNON-GRANT, CLARK GRANT, and co-conspirators known and unknown to the Grand Jury, agreed to fraudulently apply to MA DUA for PUA benefits that they knew they were not eligible to receive. After fraudulently obtaining PUA benefits, CANNON-GRANT and CLARK GRANT used the funds to pay for their joint household expenses and other personal expenditures.

Object and Purpose of the PUA Wire Fraud Conspiracy

41.    The object of the PUA Wire Fraud Conspiracy was for CANNON-GRANT, CLARK

GRANT, and other CANNON-GRANT and CLARK GRANT family members, including FM-1

and "FM-2", to fraudulently apply to MA DUA for PUA.   The principal purpose of the conspiracy

and scheme to defraud was to boost the household income of CANNON-GRANT and CLARK

GRANT with PUA money to help pay for their joint living expenses, including rent, insurance,

and other household bills.

Manner and Means of the PUA Wire Fraud Conspiracy and Scheme to Defraud

42.    Among the manner and means by which CANNON-GRANT, CLARK GRANT, and their

co-conspirators carried out the conspiracy and scheme to defraud were the following:

      a.  Coordinating the submission of false online applications and certifications to MA DUA for PUA funds;

      b.  Concealing VIB income, Commuter Service Co. income, and consulting income from MA DUA in order to receive weekly PUA benefits;

      c.  Using fraudulently obtained PUA income to pay for their joint household and living expenses; and

      d.  Creating and submitting phony documentation to MA DUA in order to continue receiving weekly PUA payments.

Acts in Furtherance of the PUA Wire Fraud Conspiracy and Scheme to Defraud

*Submission of False Applications*

43.    In May 2020, CANNON-GRANT, CLARK GRANT, FM-1, and FM-2 each submitted false and fraudulent applications to MA DUA in order to collect PUA.    In their respective applications, CANNON-GRANT, CLARK GRANT, FM-1, and FM-2 each certified that (i) "all information provided is accurate and the answers to all questions are true and correct"; (ii) that they acknowledged that "Massachusetts and Federal Law provides penalties and/or imprisonment for false statements to obtain benefits, and that MA DUA actively pursues fraudulently collected benefits;" and (iii) that they acknowledged "under penalty of perjury, all information provided is complete and accurate to the best of [their] ability."

44.    In CANNON-GRANT's, CLARK GRANT's, FM-1's, and FM-2's respective May 2020 PUA applications, each sought to collect PUA dating back to March 2020.    CANNON-GRANT claimed, among other things, that her "place of employment closed because of COVID-19," and that she did not have earnings in excess of $89.00 in any work week between March 8, 2020 and May 16, 2020.    CLARK GRANT claimed, among other things, that he was "self employed, an independent contractor, or a gig worker and COVID-19 has severely limited my ability to perform my normal work," that he was not getting "full time pay from [his] employer or union while not working," and that he did not have earnings in excess of $89.00 in any work week between March 29, 2020 and May 16, 2020.    FM-1 claimed, among other things, that FM-1 did not earn more than $5,100 of employment income from employers who took taxes out of FM-1's paycheck in 2019, and that FM-1 was not receiving full-time pay in 2020.    FM-2 claimed, among other things, that, as of March 1, 2020, FM-2 "was scheduled to start a job with a new employer" and could not "start that job or the offer was withdrawn as a result of COVID-19."

45.     CANNON-GRANT was aware that her May 16, 2020 PUA application was false because, among other things, (i) her place of employment had not closed; (ii) she was actively performing work for VIB as its CEO; and (iii) as described in paragraphs 6 through 25 above, she was paying herself income from the VIB Bank Account in the form of cash withdrawals, debit card purchases, rent payments, and Robinhood and E*Trade deposits during the period that she claimed she was not earning in excess of $89.00 in any work week.

46.     CLARK GRANT was aware that his May 16, 2020 PUA application was false because, among other things, (i) he was a full-time employee at the Commuter Service Co.; (ii) he was not self-employed, an independent contractor, or a gig worker; (iii) he had earned weekly pay from the Commuter Service Co. that was well in excess of $89.00 for each work week from March 29, 2020 to May 16, 2020; and (iv) he had collected income from VIB in the form of cash withdrawals and other debit card purchases from the VIB Bank Account during the same period.

47.     FM-1 was aware that FM-1's May 19, 2020 PUA application was false because, among other things, FM-1 did receive more than $5,100 in income in 2019, and FM-1 was, in fact, receiving full time pay from FM-1's employer in 2020.[6]

48.     FM-2 was aware that FM-2's May 8, 2020 PUA application was false because, among other things, FM-2 was not scheduled to start a job with a new employer as of March 2020 and, thus, did not have employment withdrawn as a result of COVID-19.

*CANNON-GRANT Collects Consulting Income While Collecting PUA*

49.     In or about June/July of 2020, CANNON-GRANT and a business associate ("Associate 1") entered into a consulting agreement with a Massachusetts media business ("Media Co.")

---

[6] FM-1's PUA application was ultimately denied without FM-1 receiving any PUA benefits.   In March 2021, FM-1 sought to appeal the denial of PUA benefits by falsely claiming that FM-1 was not working.   This appeal was denied as well.

pursuant to which CANNON-GRANT and Associate 1 would provide Diversity, Equity, and Inclusion ("DEI") consulting services to the Media Co. in exchange for a $75,000 fee. When asked by another VIB employee whether income from this Media Co. work was going to VIB, CANNON-GRANT responded, in sum and substance, that this money was not going to VIB, but rather to a separate CANNON-GRANT entity that was doing social justice work. In reality, CANNON-GRANT deposited the majority of her share of the Media Co. payments (approximately $28,833) into her personal checking account and used it to pay CANNON-GRANT's and CLARK GRANT's household expenses such as rent, food, and other personal expenditures, all while collecting PUA payments.

50.     For example, on or about July 23, 2020, CANNON-GRANT deposited her first consulting payment of $12,500 into her personal bank account. The memo line of the check indicated that the payment was for "DEI Training":



51.     CANNON-GRANT's personal checking account records reflected that she deposited the $12,500 in consulting income while contemporaneously collecting fraudulent PUA payments:

| Deposits and other additions | | | | | |
|---|---|---|---|---|---|
| Date | Description | | | | Amount |
| 07/23/20 | ▓▓▓ | MOBILE 07/23 3721990667 DEPOSIT | *MOBILE | MA | 12,500.00 |
| 07/23/20 | ▓▓▓ ▓▓▓ | ▓▓▓ | ▓ | ▓ | ▓▓ |
| 07/29/20 | MA DUA PPD | DES:CARES ACT  ID:R6828731  INDN:CANNON, MONICA | | CO ID:CXXXXXXXXX | 800.00 |
| 07/29/20 | MA DUA PPD | DES:CARES ACT  ID:R6869691  INDN:CANNON, MONICA | | CO ID:CXXXXXXXXX | 800.00 |

52.     On or about July 27, 2020, CANNON-GRANT certified to MA DUA in her weekly PUA certification that she had received no income between Sunday, July 19, 2020 and Saturday, July 25, 2020.   This was despite the fact that, on or about July 23, 2020, CANNON-GRANT deposited the $12,500 consulting payment to her personal checking account.   In addition, CANNON-GRANT falsely certified to MA DUA that she was unable to reach her job during the reporting period because of COVID-19, even though she was performing consulting work for the Media Co:

| Select the **primary** circumstance that best describes how COVID-19 impacted your availability and ability to work between Sunday, July 19, 2020 and Saturday, July 25, 2020. |
|---|
| ☐ I was diagnosed with COVID-19, or I am experiencing symptoms of COVID-19 and am seeking a medical diagnosis. |
| ☐ A member of my household has been diagnosed with COVID-19. |
| ☐ I am providing care for a family member or a member of my household who has been diagnosed with COVID-19. |
| ☐ A child or other person I care for is unable to attend school or another facility as a result of COVID-19 and such school or facility care is required for me to work. |
| ☐ I am unable to reach my place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency. |
| ☐ I am unable to reach my place of employment because I have been advised by a health care provider to self-quarantine due to concerns related to COVID-19. |
| ☑ I was scheduled to begin employment and do not have a job or am unable to reach the job as a result of the COVID-19 public health emergency. |

53.     On or about August 27, 2020 and October 19, 2020, CANNON-GRANT received two additional consulting payments for $8,333 and $6,000, respectively, which she deposited into her personal bank account.   Similarly, CANNON-GRANT certified to MA DUA that she earned no

income during that period, and that she was unable to reach or work at her employment because of COVID-19, while collecting the below payments:



54.     On or about September 5, 2020, CANNON-GRANT certified to MA DUA in her weekly PUA certification that she had received no income between Sunday, August 23, 2020 and Saturday, August 29, 2020.   This was despite the fact that, on or about August 28, 2020, CANNON-GRANT deposited the above $8,333 consulting payment to her personal checking account during that period.



55.     On or about March 21, 2021, CANNON-GRANT certified to MA DUA in her weekly PUA certification that she had received no income between Sunday, October 18, 2020 and Saturday, October 24, 2020.   This was despite the fact that, on or about October 20, 2020, CANNON-GRANT deposited the above $6,000 consulting payment to her personal checking account.   In

her March 21, 2021 certification to MA DUA (for the 10/18/2020 – 10/24/2020 period) CANNON-GRANT also certified that her "place of employment is closed as a direct result of the COVID-19 public health emergency." CANNON-GRANT knew this certification was false because VIB was not closed, and CANNON-GRANT had placed herself on VIB payroll, effective October 24, 2020.

56.     Finally, on or about November 1, 2020, CANNON-GRANT asked Associate 1 for a final $2,000 payment pursuant to the consulting agreement with the Media Co.   Associate 1 agreed to CANNON-GRANT's request and paid the final $2,000 payment, in cash, to CANNON-GRANT on or about November 2, 2020 as per the below communications:



57.     On or about March 21, 2021, CANNON-GRANT certified to MA DUA in her weekly PUA certification that she had received no income between November 1, 2020 and November 7, 2020. This was despite the fact that, on or about November 2, 2020, CANNON-GRANT received $2,000 in cash from Associate 1 pursuant to the consulting agreement with the Media Co.

*CANNON-GRANT Collects VIB Payroll and PUA*

58.     Shortly after collecting her last consulting payment, CANNON-GRANT had VIB use a third-party payroll service to pay herself weekly VIB salary of approximately $2,788 per week in gross pay, effective as of October 24, 2020.   Thereafter, VIB paid CANNON-GRANT weekly payroll, which was sent via direct deposit to her personal checking account from the VIB Bank Account.

59.     Although CANNON-GRANT received weekly VIB payroll for the period from October 24, 2020 through March 20, 2021, CANNON-GRANT submitted fraudulent PUA certifications to MA DUA for the same period, on or about March 21, 2021, claiming that she had not earned in excess of $89.00 in any weekly reporting period and that her ability to work had been affected by COVID-19.   CANNON-GRANT's fraudulent submissions to MA DUA caused MA DUA to issue CANNON-GRANT an additional approximately $11,124 in PUA funds, which were wired via direct deposit to CANNON-GRANT's personal checking account.

60.     On or about March 24, 2021, MA DUA sent CANNON-GRANT a letter informing her that (i) she needed to provide MA DUA with additional documentation to substantiate that CANNON-GRANT was eligible to receive PUA benefits; and (ii) unless she provided the necessary documentation she would be required to repay the benefits that she had received.

61.     On or about March 26, 2021, CANNON-GRANT texted CLARK GRANT about the March 24, 2021 MA DUA notice letter.   CLARK GRANT responded by text that CANNON-GRANT should have one of her associates ("Associate 2") create a false letter[7] informing MA

---

[7] CLARK GRANT knew that Associate 2 could assist with false documents because, in the past, CANNON-GRANT had requested Associate 2 to help prepare a fake letter whose purpose was to assist CANNON-GRANT and CLARK GRANT in receiving housing benefits for which they did not qualify.   At CANNON-GRANT's request, Associate 2 had also prepared fake negative COVID-19 test result letters for CANNON-GRANT and CLARK GRANT so that they could attend a Boston Celtics game.

DUA that VIB's building was closed.   The March 26, 2021 text message exchange between CANNON-GRANT (left, in blue) and CLARK GRANT (right, in green) was as follows:



62.     Associate 2 did not create a false letter for CANNON-GRANT.   In or about June 2021, however, CLARK GRANT enlisted Associate 2's assistance in creating documentation that CLARK GRANT submitted to MA DUA to fraudulently continue to receive PUA benefits, as described below.

*CLARK GRANT Submits False Documents to MA DUA*

63.     On or about March 23, 2021, MA DUA sent CLARK GRANT a letter informing him that (i) he needed to provide MA DUA with additional documentation to substantiate that CLARK GRANT was eligible to receive PUA benefits; and (ii) unless he provided the necessary documentation by June 21, 2021, he would be required to repay the benefits that he had received.

64.     In or about May/June 2021, CLARK GRANT had Associate 2 draft a four-page "Independent Contractor Agreement" ("ICA") for CLARK GRANT that was backdated with an effective date of March 24, 2020.   The ICA purported that CLARK GRANT would provide facilities management services for a company called "Partners United Inc.," whose principal was

"Jordan Quatrell," and whose address was at 8 Rosedale Street, Dorchester.   CLARK GRANT knew that the ICA was phony and that the company's name, principal, and address were all fictitious because Associate 2 had come up with names and address himself/herself.   (Associate 2 was unaware that CLARK GRANT intended to use the ICA to defraud MA DUA.)

65.     On or about June 20, 2021, CLARK GRANT responded to MA DUA's employment substantiation request by (i) filling out an online form indicating that he was self-employed, and (ii) uploading the first two pages of the phony ICA.

66.     In response, on or about September 2, 2021, MA DUA re-sent its fact-finding request to CLARK GRANT with a fourteen-day deadline to respond with additional information.   On or about September 16, 2021, CLARK GRANT sent the full four-page ICA to MA DUA.

*CLARK GRANT Aids FM-2 in Submitting False Document to MA DUA*

67.     On or about March 23, 2021, MA DUA also sent FM-2 a letter informing FM-2 that (i) FM-2 needed to provide MA DUA with additional documentation to substantiate that FM-2 was eligible to receive PUA benefits; and (ii) unless FM-2 provided the necessary documentation by June 21, 2021, FM-2 would be required to repay any PUA benefits received.

68.     Email records for CLARK GRANT and FM-2 showed that: (i) on June 20, 2021, the day before the deadline, FM-2 shared a Word document, titled, "Offer Letter" with CLARK GRANT; (ii) on June 21, 2021, CLARK GRANT worked on the Offer Letter document – a phony Amazon job offer letter to FM-2 that was backdated to March 17, 2020; and then (iii) on June 21, 2021, CLARK GRANT created a pdf of the Offer Letter, and, in turn, forwarded it to FM-2 (the "Fake Amazon Letter").

69.     On June 21, 2021, FM-2 submitted the Fake Amazon Letter to MA DUA as proof that FM-2 was entitled to receive all of the PUA benefits dating back from March 2020 to June 2021.   In

addition to the Fake Amazon Letter, both FM-2 and CLARK GRANT were aware that FM-2's

PUA benefits from March 2020 to September 2021 were fraudulently obtained because FM-2 was

gainfully employed and receiving weekly payroll from FedEx and a private security company from

at least April 2021 to September 2021.

70.     As a result of CANNON-GRANT's, CLARK GRANT's, and FM-2's false May 2020 PUA

applications, false weekly certifications to MA DUA regarding employment and income, and other

phony document submissions, MA DUA paid the following approximate wire payments to the

below, respective personal checking accounts:

| PUA Recipient | PUA Funds (appx.) |
|---|---|
| CANNON-GRANT | $33,426 |
| CLARK GRANT | $67,950 |
| FM-2 | $43,893 |
| **Total** | **$145,269** |

71.     CANNON-GRANT, CLARK GRANT, and FM-2 used their fraudulently obtained PUA

benefits to help pay for plane tickets, new furniture, Amazon purchases, and help pay for the costs

of a motorcycle for CLARK GRANT, among other personal expenditures for their household.

**Office of Housing Stability Wire Fraud Conspiracy and Scheme to Defraud**

General Allegations

72.     The City of Boston Office of Housing Stability ("OHS") was a city agency charged with

providing federal funds to Boston residents in need of rental relief who were either facing housing

insecurity and/or at risk of eviction, among other things.   To receive OHS rental assistance,

applicants were required to prove their Boston residency and demonstrate financial need by

truthfully, accurately, and completely disclosing all household income in an application to OHS.

73.     The OHS rental assistance application required applicants to disclose: (i) monthly income

for all adult household members; (ii) whether any working members of the household applied for

unemployment insurance; and (iii) all unemployment benefits received, among other things.   At the end of the application, the applicant was required to declare under penalty of perjury that the applicant "experienced a loss of income due to the COVID-19 pandemic, that [the applicant has] no other means of paying for the costs requested (including savings)," and that all the representations in the application were "true, correct, accurate and complete in all respects." These disclosures were material to OHS's decision-making and approval process.

74.    After approving an application, OHS distributed the rental assistance funds through non-profit vendors that would issue checks to the applicant.   The Neighborhood of Affordable Housing ("NOAH") was an OHS vendor that distributed rental assistance checks.   NOAH issued rental assistance checks through Citizens Bank, a bank based in Rhode Island that processed customer check transactions through interstate wire communications.

<u>Overview of OHS Wire Fraud Conspiracy</u>

75.    Beginning in or about May 2021 and continuing through in or about August 2021, CANNON-GRANT and CLARK GRANT, and co-conspirators known and unknown to the Grand Jury, agreed to submit false information and conceal their true household income and financial wherewithal to OHS in order to fraudulently obtain $12,600 in rental assistance funds.

<u>Object and Purpose of the OHS Wire Fraud Conspiracy</u>

76.    The object of the OHS Wire Fraud Conspiracy was for CANNON-GRANT and CLARK GRANT to obtain rental assistance funds.   The principal purpose of the conspiracy was to use fraudulent means to obtain rental assistance funds in order to boost CANNON-GRANT's and CLARK GRANT's household income in order to pay rent for Boston Residence 2 and allow for other personal expenses, including thousands of dollars in closing costs for the upcoming purchase of the Bristol Residence and a car for FM-2, among other things.

Manner and Means of the OHS Wire Fraud Conspiracy

77.     Among the manner and means by which CANNON-GRANT, CLARK GRANT, and their co-conspirators carried out the conspiracy and scheme to defraud were the following:

*Concealing Household Income from OHS*

78.     CANNON-GRANT and CLARK GRANT concealed thousands of dollars in monthly income on the May 13, 2021 OHS rental assistance application.   Income that the defendants omitted from the May 13, 2021 application included:

      a.   CANNON-GRANT's monthly income from her weekly VIB paycheck of $1,992.

      b.   CLARK GRANT's monthly income from his weekly MA DUA payment of $767 in PUA funds.

      c.   FM-1's monthly income from FM-1's weekly paycheck from VPNE Parking Solutions.

      d.   FM-2's monthly income from FM-2's weekly paycheck from Federal Express.

      e.   FM-2's monthly income from FM-2's weekly MA DUA payment of $482 in PUA funds.

79.     In or about May 20, 2021, seeking additional income information, an OHS representative requested CLARK GRANT to provide his and CANNON-GRANT's tax return information, as well as pay stubs for CANNON-GRANT.   Although CLARK GRANT provided April 2021 and some May 2021 paystubs for CANNON-GRANT, the defendants (i) concealed the fact that CANNON-GRANT planned to issue, and did, in fact issue, herself a $15,000 VIB bonus check in May 2021, and (ii) submitted a copy of CLARK GRANT's 2020 federal tax return, which omitted all the MA DUA income that he had received in 2020.

Acts in Furtherance of the OHS Wire Fraud Conspiracy

80.     From in or about April 2021 through in or about August 2021, CANNON-GRANT,

CLARK GRANT, and co-conspirators known and unknown to the Grand Jury committed and

caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

  a.  On or about May 13, 2021, CLARK GRANT electronically submitted a rental assistance
      application to OHS that omitted (i) monthly income for CANNON-GRANT, FM-1, and
      FM-2; and (ii) MA DUA income for CLARK GRANT and FM-2.

  b.  On or about May 17, 2021, CLARK GRANT emailed an OHS representative the lease
      packet for the five-bedroom apartment in East Boston (Boston Residence 2) for which
      CLARK GRANT and CANNON-GRANT were seeking rental assistance.

  c.  On or about May 20, 2021, CANNON-GRANT emailed an OHS representative two April
      2021 and one May 2021 VIB paystubs.

  d.  On or about May 21, 2021, CLARK GRANT emailed an OHS representative a copy of his
      2020 federal tax return, which omitted his MA DUA income.

  e.  On or about August 29, 2021, CANNON-GRANT emailed an OHS representative to
      confirm whether the August 2021 rent had been paid for Boston Residence 2.

**The Mortgage Fraud Conspiracy and Scheme to Defraud**

General Allegations

81.     The Mortgage Lender, was a Chicago-based mortgage lending company that did business

in interstate commerce, including home mortgage lending in Massachusetts.   As part of the

Mortgage Lender's home mortgage lending process, mortgage applicants were required to (i)

complete a mortgage application, in which applicants were to (ii) provide truthful and accurate

information about their income, assets, and liabilities, and (iii) acknowledge under penalty of

federal prosecution that information that they provided in the application was true and accurate.

82.     Mortgage applicants whose income and/or assets were insufficient to obtain approval from

the Mortgage Lender were permitted to supplement their assets by receiving bona fide gifts.   To

establish that a gift was bona fide, the mortgage applicant (gift recipient) and the gift giver had to

execute and submit a gift letter to the Mortgage Lender.   The gift letter required both the mortgage

applicant (gift recipient) and the gift giver to sign the gift letter and certify that "no repayment of

this gift is expected or implied either in the form of cash or future services of the recipient."

83.     Truthful and accurate information from prospective borrowers in the mortgage application

and gift letters, as well as during the mortgage application process, was material to the Mortgage

Lender because it relied upon such information in evaluating the creditworthiness of the applicant

and assessing the risk of loss in issuing the mortgage loan to the applicant.

Overview of the Mortgage Fraud Conspiracy

84.     Beginning in or about May 2021 and continuing through July 2021, CANNON-GRANT

and CLARK GRANT, and co-conspirators known and unknown to the Grand Jury, agreed to

submit false information and fraudulent documentation to the Mortgage Lender in order to obtain

a home mortgage loan for CANNON-GRANT and CLARK GRANT to purchase the Bristol

Residence.

Object and Purpose of the Mortgage Fraud Conspiracy

85.     The object of the Mortgage Fraud Conspiracy was for CANNON-GRANT and CLARK

GRANT to obtain a home mortgage loan.   The principal purpose of the conspiracy was to use

fraudulent means to obtain a home mortgage loan from the Mortgage Lender in order to purchase

the Bristol Residence.

Manner and Means of the Mortgage Fraud Conspiracy

86.     Among the manner and means by which CANNON-GRANT, CLARK GRANT, and their

co-conspirators carried out the conspiracy and scheme to defraud were the following:

*Falsely Representing VIB Assets as Personal Assets*

87.     On or about May 20, 2021, CLARK GRANT submitted an online application (the "Initial Application") to the Mortgage Lender seeking a mortgage loan of approximately $402,573 to purchase the Bristol Residence, which was listed at a sale price of approximately $410,000. Around the time of the Initial Application, CANNON-GRANT's personal checking account reflected a closing balance of approximately $782.35 on May 19, 2021.   CLARK GRANT's personal checking account reflected a closing balance of approximately $707.48 on May 21, 2021.

88.     In an effort to present a more robust picture of his finances, CLARK GRANT falsely listed the VIB Bank Account as his own personal asset on the Initial Application, which CLARK GRANT represented had a balance of approximately $461,548.   CLARK GRANT knew this was false because as a VIB Director, he knew that VIB assets were not his own.   CLARK GRANT certified and electronically signed the Initial Application, acknowledging that "any intentional or negligent misrepresentation of information may result in … criminal penalties[.]"   After conducting its own internal financial research, the Mortgage Lender determined that the VIB Bank Account was not CLARK GRANT's personal asset and disregarded the VIB Bank Account as a financial asset.

*CANNON-GRANT Issues Herself a VIB Salary Bonus*

89.     On or about May 26, 2021, CANNON-GRANT issued herself an approximately $22,304 salary bonus from VIB to help pay for mortgage costs incurred by CANNON-GRANT and CLARK GRANT as they sought to obtain a mortgage from the Mortgage Lender.   On that same date, CANNON-GRANT caused the net proceeds (after tax withholdings) of the VIB salary bonus – approximately $14,470 – to be deposited in CANNON-GRANT's personal checking account.

90.     On or about May 26, 2021, CANNON-GRANT and CLARK GRANT executed a gift

letter, pursuant to which CANNON-GRANT agreed to gift CLARK GRANT $13,350 towards the

purchase of the Bristol Residence.   Thereafter, on or about May 28, 2021, CANNON-GRANT

used her VIB bonus proceeds to purchase a $13,350 official check (to be used towards the purchase

of the Bristol Residence).

91.     CANNON-GRANT and CLARK GRANT then executed and submitted the gift letter as

part of their final mortgage application to the Mortgage Lender (the "Final Application"), which

CLARK GRANT submitted online on or about July 21, 2021.

    *CLARK GRANT Sends False ICA to the Mortgage Lender*

92.     In or about July 2021, the Mortgage Lender identified other problems with CLARK

GRANT's finances pertaining to his Final Application.   The Mortgage Lender requested CLARK

GRANT to clarify why he was receiving MA DUA unemployment benefits while he was a full-

time employee with the Commuter Service Co.

93.     In response, CLARK GRANT sent and electronically signed the following false

explanation to the Mortgage Lender:

---

07062021


To Whom this concerns:



The MA DUA Unemployment deposits were due to the Cleaning contracts that were cancelled due to
Covid-19.



*Clark A Grant signature*          07-06-2021
Clark A Grant

---

33

94.     CLARK GRANT knew that his July 6, 2021 explanation was false because he knew that the MA DUA payments were due to his scheme to defraud MA DUA, and not due to purportedly cancelled "Cleaning contracts."   After the Mortgage Lender found the July 6, 2021 explanation insufficient, on or about July 13, 2021, CLARK GRANT submitted the phony ICA, as well as another false explanation, which he signed and sent online to the Mortgage Lender:



95.     CLARK GRANT knew that his July 13, 2021 explanation was false because he never had a cleaning contract and the other party to the ICA was fictitious.

*CANNON-GRANT and CLARK GRANT Orchestrate a Fake Gift*

96.     As the July 21, 2021 closing date for the purchase of the Bristol Residence approached, Mortgage Lender officials informed CANNON-GRANT and CLARK GRANT that CLARK GRANT did not appear to have sufficient funds to pay the closing costs.   To remedy this issue, CANNON-GRANT and CLARK GRANT orchestrated the issuance of a fake $3,000 gift to CLARK GRANT.

97.     On or prior to July 20, 2021, CANNON-GRANT approached an associate ("Associate 3") to loan her $3,000, which CANNON-GRANT agreed to repay Associate 3.   CANNON-GRANT

and CLARK GRANT then informed Associate 3 to (i) wire $3,000 to CANNON-GRANT's and CLARK GRANT's real estate attorney; and to (ii) execute and sign a gift letter.

98.   Associate 3 wired $3,000 to CANNON-GRANT's and CLARK GRANT's real estate attorney, and executed a gift letter dated July 20, 2021, which CLARK GRANT signed and submitted to the Mortgage Lender as part of the Final Application package.   In the July 20, 2021 gift letter, CLARK GRANT certified that "no repayment of this gift is expected or implied in the form of cash or future services of the recipient."

99.   CANNON-GRANT and CLARK GRANT knew that the July 20, 2021 gift letter was false because CANNON-GRANT had agreed to pay back the $3,000 that Associate 3 had paid towards their closing costs.   On or about July 21, 2021, CLARK GRANT's Final Application was approved, the Mortgage Lender issued the approximately $402,573 mortgage to CLARK GRANT, and CANNON-GRANT and CLARK GRANT closed on the purchase of the Bristol Residence.

100.   On or about July 30, 2021, pursuant to their prior arrangement, Associate 3 emailed CANNON-GRANT seeking repayment of the $3,000, asking CANNON-GRANT: "When you can, let me know when you might transfer my funds."   That same date, CANNON-GRANT assured Associate 3 that she and CLARK GRANT would pay Associate 3 back by August 2 in the below email:

| | |
|---|---|
| **From:** | Monica Cannon <▮▮▮▮▮▮▮▮> |
| **Sent:** | Friday, July 30, 2021 12:16 PM |
| **To:** | ▮▮▮▮▮▮▮▮ |
| **Cc:** | Clark Grant <▮▮▮▮▮▮▮▮> |
| **Subject:** | Re: Hope all is well. When you can, let me know when you might transfer my funds. |

We will be able to transfer your funds once the refund check clears which is August 2nd. I cc'd my husband whose account it is in.

Thank you,
Monica

101.    On or about August 2, 2021, as per the prior arrangement between CANNON-GRANT and

Associate 3, CLARK GRANT wired $3,000 from his personal checking account to Associate 3.

<u>Overt Acts in Furtherance of the Mortgage Fraud Conspiracy</u>

102.    From in or about May 20, 2021 through in or about August 2, 2021, CANNON-GRANT,

CLARK GRANT, and coconspirators known and unknown to the Grand Jury committed and

caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

a.  On or about May 20, 2021, CLARK GRANT electronically submitted a signed a Loan
    Application to the Mortgage Lender (i) listing the VIB Bank Account as a personal asset,
    and (ii) omitting any income from VIB.

b.  On or about July 6, 2021, CLARK GRANT submitted a signed letter to the Mortgage
    Lender stating: "The MA DUA Unemployment deposits were due to the Cleaning contracts
    that were cancelled due to Covid-19."

c.  On or about July 13, 2021, CLARK GRANT submitted a signed letter to the Mortgage
    Lender stating: "Concerning the Cleaning contract that was offered to me during Covid –
    19, They provided a contract but was never able to provide services to this company.
    Several attempts were made to contact them but I was unsuccessful."

d.  On or about July 13, 2021, CLARK GRANT electronically submitted the ICA to the
    Mortgage Lender.

e.  On or about July 20, 2021, CLARK GRANT electronically submitted a signed gift letter
    to the Mortgage Lender, which acknowledged the receipt of a $3,000 gift from Associate
    3, and that "no repayment of this gift is expected or implied either in the form of cash or
    future services of the recipient."

f.  On or about July 30, 2021, CANNON-GRANT sent an email to Associate 3 and CLARK
    GRANT that stated:   "We will be able to transfer your funds once the refund check clears
    which is August 2nd.   I cc'd my husband whose account it is in.   Thank you, Monica."

g.  On or about August 2, 2021, CLARK GRANT wired a payment of $3,000 from his
    personal checking account to Associate 3.

**<u>Filing False Tax Returns; Failure to File Tax Returns</u>**

103.    The Internal Revenue Service ("IRS") is an agency of the United States Department of

Treasury responsible for enforcing and administering the tax laws of the United States.   Under

these laws, individuals were required to accurately report income to the Internal Revenue Service on individual income tax return forms (Form 1040 with schedules and attachments) and pay all income tax and tax penalties due and owing.   If a taxpayer failed to accurately report or pay his or her tax liability, the Internal Revenue Service could calculate, assess, and attempt to collect the correct tax liability.

104.    In March 2018, CANNON-GRANT filed her 2017 Form 1040, declaring under penalty of perjury that she had received $25,675 in total income ($13,611 in wages from Metro Housing Boston, and $12,064 in unemployment compensation).    CANNON-GRANT knew that her 2017 Form 1040 was false because, among other things, (i) CANNON-GRANT had received and cashed a $10,400 check payable to VIB as part of the Department Store Company Grant fraud in October 2017; and (ii) CANNON-GRANT caused $3,400 in VIB PayPal funds to be diverted to her family member, FM-1, VIB PayPal funds of which derived in part from a $3,000 donation to VIB from BLMC.

105.    In April 2019, CANNON-GRANT filed her 2018 Form 1040, declaring under penalty of perjury that she had received $5,959 in total income ($5,959 in unemployment compensation). CANNON-GRANT knew that her 2018 Form 1040 was false because, among other things, (i) CANNON-GRANT had cashed VIB donation checks totaling $1,300 at DCB in 2018; and (ii) CANNON-GRANT diverted thousands of dollars from the VIB Bank Account and VIB PayPal Account to pay for thousands of dollars in personal expenditures, including cell phone bills, Amazon purchases, meals, gas, auto insurance, Uber charges, ATM cash withdrawals, as well as purchases at Old Navy, TJ Maxx, the Apple Store and nail salons.

106.    During calendar year 2019, CANNON-GRANT received income from numerous sources, including, but not limited to: (i) compensation from the Massachusetts Housing Finance Agency

($2,500) and the Justice Resource Institute ($650); (ii) income from misappropriating the $6,000 MDAO grant; (iii) income from cashing a $1,534.51 Network for Good check and a $500 CWO check, both payable to VIB; (iv) income from diverting thousands of dollars from the VIB Bank Account and VIB PayPal Account through thousands of dollars in cash withdrawals and debits to pay for personal meals, groceries, car payments, Uber, Amazon, nail salon services, and purchases at the Wrentham Outlet Mall.   CANNON-GRANT was required by law, following the close of calendar year 2019, and on or before April 15, 2020, to file a Form 1040 individual income tax return with the IRS and to pay taxes due and owing.   CANNON-GRANT failed to file a Form 1040 individual income tax return for the calendar year 2019 on or before April 15, 2020.

107.     During calendar year 2020, CANNON-GRANT received income from numerous sources, including, but not limited to: (i) VIB payroll of approximately $25,096; (ii) PUA unemployment payments of approximately $22,302; (iii) Media Co. consulting income totaling $28,833; and (iv) income from diverting thousands of dollars from the VIB Bank Account and VIB PayPal Account through cash withdrawals and debits to pay for personal expenses such as car loan payments, auto insurance, a car for FM-1, EZ-Pass tolls, meals, Uber, iPhones, deposits to E*Trade and Robinhood, and other personal expenditures. CANNON-GRANT was required by law, following the close of calendar year 2020, and on or before April 15, 2021, to file a Form 1040 individual income tax return with the IRS and to pay taxes due and owing.   CANNON-GRANT failed to file a Form 1040 individual income tax return for the calendar year 2020 on or before April 15, 2021.

<u>COUNT ONE</u>
Conspiracy to Commit Wire Fraud (VIB Wire Fraud Conspiracy)
(18 U.S.C. § 1349)

The Grand Jury charges:

108.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-35 of this Superseding Indictment.

109.     From at least in or about October 2017 through at least January 2021 in the District of Massachusetts and elsewhere, the defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

conspired with each other and with others known and unknown to the Grand Jury to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, they did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the VIB scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

<u>COUNT TWO</u>
Conspiracy to Commit Wire Fraud (PUA Wire Fraud Conspiracy)
(18 U.S.C. § 1349)

The Grand Jury further charges:

110.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-71 of this Superseding Indictment.

111.    From at least in or about May 2020 through in or about September 2021 in the District of Massachusetts and elsewhere, the defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

conspired with each other and with others known and unknown to the Grand Jury to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, they did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the PUA scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

<u>COUNT THREE</u>
Conspiracy to Commit Wire Fraud (OHS Wire Fraud Conspiracy)
(18 U.S.C. § 1349)

The Grand Jury further charges:

112.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-80 of this Superseding Indictment.

113.    From at least in or about May 2021 through in or about August 2021 in the District of Massachusetts and elsewhere, the defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

conspired with each other and with others known and unknown to the Grand Jury to commit wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, they did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the OHS scheme to defraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## COUNT FOUR
Conspiracy to Make False Statements to a Mortgage Lending Business (Mortgage Fraud Conspiracy)
(18 U.S.C. § 371)

The Grand Jury further charges:

114.   The Grand Jury re-alleges and incorporates by reference paragraphs 1-102 of this Superseding Indictment.

115.   From at least in or about May 2021 through August 2021, in the District of Massachusetts and elsewhere, the defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

conspired with each other and with others known and unknown to the Grand Jury to commit an offense against the United States, to wit, Making a False Statement to a Mortgage Lending Business, that is, to knowingly make a false statement and report for the purpose of influencing in any way the action of the Mortgage Lender, a mortgage lending business, in order to obtain a home mortgage loan for the Bristol Residence.

All in violation of Title 18, United States Code, Section 371.

42

<u>COUNT FIVE</u>
Mail Fraud; Aiding and Abetting (VIB Mail Fraud)
(18 U.S.C. §§ 1341 and 2)

The Grand Jury further charges:

116.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-35 of this Superseding Indictment.

117.    On or about the date listed below, in the District of Massachusetts, and elsewhere, the defendant,

(1) MONICA CANNON-GRANT,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did, for the purpose of executing the VIB scheme to defraud, knowingly cause to be delivered by mail and by any private and commercial interstate carrier according to the direction thereon, the following:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 5 | 10/23/2017 | Mailing of $10,400 check from the Charlottesville Church, VA to Boston Residence 1, MA |

All in violation of Title 18, United States Code, Sections 1341 and 2.

COUNTS SIX - TWELVE
Wire Fraud; Aiding and Abetting (VIB Wire Fraud)
(18 U.S.C. §§ 1343 and 2)

The Grand Jury further charges:

118.   The Grand Jury re-alleges and incorporates by reference paragraphs 1-35 of this Superseding Indictment.

119.   On or about the dates listed below, in the District of Massachusetts, and elsewhere, the defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing the VIB scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 6 | 9/24/2018 | Cashing of $1,140 Network for Good check in Boston, MA |
| 7 | 12/20/2018 | Cashing of $488 Network for Good check in Boston, MA |
| 8 | 1/23/2019 | Cashing of $1,534.51 Network for Good check in Boston, MA |
| 9 | 6/28/2019 | MCDAO $6,000 funds transfer to VIB Bank Account |
| 10 | 4/14/2020 | VIB Bank Account $500 transfer to E*Trade account |
| 11 | 5/4/2020 | BRF $53,977 funds transfer to VIB Bank Account |
| 12 | 1/1/2021 | VIB PayPal Account appx. $5,000 transfer to CANNON-GRANT personal checking account |

All in violation of Title 18, United States Code, Sections 1343 and 2.

<u>COUNTS THIRTEEN - TWENTY</u>
Wire Fraud; Aiding and Abetting (PUA Wire Fraud)
(18 U.S.C. §§ 1343 and 2)

The Grand Jury further charges:

120.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-71 of this Superseding Indictment.

121.    On or about the dates listed below, in the District of Massachusetts, and elsewhere, the defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing the PUA scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 13 | 5/19/2020 | CANNON-GRANT's false PUA application uploaded to MA DUA |
| 14 | 5/19/2020 | CLARK GRANT's false PUA application uploaded to MA DUA |
| 15 | 7/27/2020 | CANNON-GRANT's false PUA weekly certification for 7/19/2020-7/25/2020 uploaded to MA DUA |
| 16 | 3/21/2021 | CANNON-GRANT's false PUA weekly certification for period of 10/18/2020-10/24/2020 uploaded to MA DUA |
| 17 | 3/21/2021 | CANNON-GRANT's false PUA weekly certification for period of 3/14/2021-3/20/2021 uploaded to MA DUA |
| 18 | 6/20/2021 | CLARK GRANT's submission of phony ICA (pages 1-2) to MA DUA |
| 19 | 6/21/2021 | FM-2's submission of Fake Amazon Letter to MA DUA |
| 20 | 9/16/2021 | CLARK GRANT's submission of phony ICA (pages 1-4) to MA DUA |

All in violation of Title 18, United States Code, Sections 1343 and 2.

45

COUNTS TWENTY-ONE – TWENTY-TWO
Wire Fraud; Aiding and Abetting (OHS Wire Fraud)
(18 U.S.C. §§ 1343 and 2)

The Grand Jury further charges:

122.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-80 of this Superseding Indictment.

123.    On or about the dates listed below, in the District of Massachusetts, and elsewhere, the defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing the OHS scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 21 | 6/14/2021 | Deposit of $4,200 NOAH check to CLARK GRANT's personal checking account |
| 22 | 6/29/2021 | Deposit of $4,200 NOAH check to CLARK GRANT's personal checking account |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNT TWENTY-THREE
Making False Statements to a Mortgage Lending Business; Aiding and Abetting
(18 U.S.C. §§ 1014 and 2)

The Grand Jury further charges:

124.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-102 of this

Superseding Indictment.

125.    On or about the dates listed below, in the District of Massachusetts, and elsewhere, the

defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

knowingly made a false statement and report for the purpose of influencing in any way the action

of the Mortgage Lender, a mortgage lending business, in order to obtain an approximately

$402,573 mortgage loan from the Mortgage Lender to purchase the Bristol Residence:

| Count | Document/ Dates | Material false statement/omission |
|---|---|---|
| 23 | Mortgage loan application (5/20/2021) in connection with Home Mortgage Loan for Bristol Residence ($402,573) | • Listing VIB Bank Account as a personal asset.<br>• Omission of VIB income. |
| | MA DUA explanation letter (7/6/2021) in connection with Home Mortgage Loan for Bristol Residence ($402,573) | • "MA DUA Unemployment deposits were due to the Cleaning contracts that were canceled due to Covid-19."<br>• Omits MA DUA fraud as reason for MA DUA payments.<br>• Omits that Cleaning contracts were fictitious. |
| | MA DUA explanation letter and submission of ICA (7/13/2021) in connection with Home Mortgage Loan for Bristol Residence ($402,573) | • "Concerning the Cleaning contract that was offered to me during Covid-19, They provided a contract but was never able to provide services to this company. Several attempts were made to contact them but I was unsuccessful."<br>• Omits MA DUA fraud as reason for MA DUA payments.<br>• Omits that ICA, company, and Cleaning contract were fictitious. |
| | Associate 3 gift letter (7/20/2021) in connection with Home Mortgage Loan for Bristol Residence ($402,573) | • Certification that "no repayment of this gift is expected or implied in the form of cash or future services of the recipient."<br>• Omits that CANNON-GRANT agreed to repay the gift to Associate 3. |

All in violation of Title 18, United States Code, Sections 1014 and 2.

COUNTS TWENTY-FOUR – TWENTY-FIVE
Filing a False Tax Return
(26 U.S.C. § 7206(1))

The Grand Jury further charges:

126.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-71 and 103-107 of this Superseding Indictment.

127.    On or about the dates listed below, in the District of Massachusetts, and elsewhere, the defendant,

(1) MONICA CANNON-GRANT,

did willfully make and subscribe a U.S. Individual Tax Return, Form 1040, for the following tax years, on behalf of herself, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, and which return defendant CANNON-GRANT did not believe to be true and correct as to every material matter, as described in paragraphs 103-107 of this Superseding Indictment:

| Count | Tax Year | Form 1040 Filing Date (appx.) |
|-------|----------|-------------------------------|
| 24    | 2017     | March 4, 2018                 |
| 25    | 2018     | April 15, 2019                |

In violation of Title 26, United States Code, Section 7206(1).

## COUNTS TWENTY-SIX – TWENTY-SEVEN
Failure to File Tax Return
(26 U.S.C. § 7203)

The Grand Jury further charges:

128.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-71 and 103-107 of this Superseding Indictment.

129.    On or about the dates listed below, in the District of Massachusetts, and elsewhere, the defendant,

### (1) MONICA CANNON-GRANT,

having received gross income in excess of the amount required to file an income tax return, and thereby being required by law to file an income tax return (Form 1040 with schedules and attachments) following the close of the calendar year, below, and on or before April 15 of the following calendar year, below, failed to make and file such return at the time required by law:

| Count | Tax Year | Required Form 1040 Filing Date |
|-------|----------|-------------------------------|
| 26    | 2019     | April 15, 2020                |
| 27    | 2020     | April 15, 2021                |

In violation of Title 26, United States Code, Section 7203.

49

## WIRE/MAIL FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

1.      Upon conviction of the offenses in violation of Title 18, United States Code,

Sections 1341, 1343, and 1349 set forth in Counts One through Three and Five through Twenty-

Two, the defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C),

and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes

or is derived from proceeds traceable to the offenses.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant

to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section

2461(c), as a result of any act or omission of the defendants --

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the Court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be divided without
        difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of the defendants up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c).

## MORTGAGE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(2)(A))

1.      Upon conviction of one or more of the offenses in violation of Title 18, United

States Code, Sections 371 and 1014, set forth in Counts Four and Twenty-Three, the defendants,

(1) MONICA CANNON-GRANT and
(2) CLARK GRANT,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(2), any

property constituting, or derived from, proceeds obtained directly or indirectly as a result of such

offenses.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant

to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the

defendants --

        a.   cannot be located upon the exercise of due diligence;

        b.   has been transferred or sold to, or deposited with, a third party;

        c.   has been placed beyond the jurisdiction of the Court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property which cannot be divided without
            difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

of the defendants up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

A TRUE BILL

FOREPERSON

DUSTIN CHAO
ADAM W. DEITCH
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS


District of Massachusetts:    March 9, 2023
Returned into the District Court by the Grand Jurors and filed.


/s/ Thomas F. Quinn Jr.  3/9/23 @ 5:00pm.

DEPUTY CLERK